618 P.2d 1086

PEOPLE of the State of Arizona ex rel. Bruce E. BABBITT, Attorney General, Plaintiff/Appellant,

v.

GREEN ACRES TRUST, an Arizona Corporation, Green Acres Memorial Gardens, Inc., an Arizona Corporation, Lisle Hawkins, Ruth Hawkins, David Hawkins, Philip Hawkins, William Hawkins, Kenneth E. Pritchard, Ed Steklenski, Wayne S. Womer, and Tom Hardwick, individually and as owners, stockholders, directors, officers, agents and employees of the corporate defendants, Defendants/Appellees.

No. 1 CA–CIV 4183.

Court of Appeals of Arizona,
Division 1,
Department C.

April 8, 1980.

Rehearing Denied Sept. 24, 1980.

Review Denied Oct. 15, 1980.

Robert K. Corbin, Atty. Gen., by Anthony B. Ching, Chief Counsel, Economic Protection Division and Deborah S. Oseran, Kenneth Sundlof, Asst. Attys. Gen., Phoenix, for appellant.

Gorodezky, Marron & Diamond by John B. Marron, Phoenix, for appellees.

## OPINION

CONTRERAS, Judge.

This appeal presents the question of whether the attorney general has standing under our consumer fraud legislation to bring an action for injunctive relief, civil penalties and restitution against a party engaging in conduct that is subject to control by an administrative body. It is our opinion that except where the legislature has by particularized and comprehensive legislation entrusted the protection of the consumer to a specific administrative agency, the attorney general may bring such action.

## BACKGROUND OF PRESENT LITIGATION

The appellee, Green Acres Trust, Inc., is a non–profit corporation that operates two mortuaries in Maricopa County and provides funeral services. Green Acres Memorial Gardens, Inc., is a corporation operated for profit that owns and operates a cemetery in connection with which it sells space and materials for the disposition of human remains. The appellee, Lisle Hawkins, is a shareholder and the president of both corporations.

For a number of years, the appellee corporations, through their own sales employees, marketed instruments styled "debentures" in denominations of $250.00. This was done without registration of either the debentures or the salesmen with the Arizona Corporation Commission as required by A.R.S. §§ 44–1841 and –1842. A "no–action" letter issued by the Securities Division of the Arizona Corporation Commission in 1961 stated, on the basis of information presented by Green Acres Trust's then counsel, that this corporation would be exempt from such registration requirements as an eleemosynary institution under the provisions of A.R.S. § 44–1843(6).

The debentures that were issued are somewhat standard–looking debt instruments, the obligor being Green Acres Trust. They were sold in conjunction with an offering and promotion of the goods and services of the two mortuaries operated by Green Acres Trust and the land and other materials sold by Green Acres Memorial Gardens. Generally, the debentures were to be redeemed to pay for the desired goods and services at the time of need. The record indicates that in some instances, at least, a solicitee would declare to the salesman the type of funeral services and other related materials he or she preferred. The salesman would place a monetary value on the materials and services, and the solicitee would purchase debentures in an amount equal or roughly equal to the amount in question and agree to make payments therefor. The debentures provided for redemption at the time of the solicitee's death, presumably for application of the proceeds to the cost of funeral and burial services and materials to be rendered for the deceased.

In 1975, Green Acres Trust and one of its debenture salesmen were made parties to proceedings before the Securities Division of the Arizona Corporation Commission. These proceedings culminated in an "Order To Cease And Desist", issued on November 14, 1975, that prohibited Green Acres Trust and its salesmen from selling Green Acres Trust debentures unless and until both they and any persons selling them or offering them for sale were registered pursuant to our Securities Act. This order was based on the conclusion that, notwithstanding the earlier "no–action" letter, sales of the unregistered debentures by unregistered representatives violated the state Securities Act.

Shortly after the cease and desist order was issued, the attorney general initiated the present litigation, based upon our Consumer Fraud Act, A.R.S. §§ 44–1521 to –1534.

## ALLEGATIONS IN THE COMPLAINT

The attorney general's complaint, as amended and as further articulated in a more definite statement, alleged violations of A.R.S. § 44–1522 set forth in six separate counts: (1) that appellees orally represented to customers that the cost of a "pre–need funeral plan" was fixed when in fact it was to be determined at the time of death and further that appellees offered to sell pre–need funeral plans but in fact sold only Green Acres Trust debentures; (2) that the written memorials of agreement issued by the two corporate appellees were not agreements for pre–need funeral plans but were, instead, subscription agreements for debentures in the case of Green Acres Trust and purchase contracts for cemetery merchandise in the case of Green Acres Memorial Gardens; (3) that appellees "concealed, suppressed or omitted" to tell solicitees the material fact that Green Acres Trust had not registered the debentures as required by law; (4) this count is essentially

the same as the third count except that it focuses upon the alleged material fact that appellees had not registered as dealers so that they could sell the debentures, as required by law; (5) that appellees "concealed, suppressed or omitted" to tell solicitees the material fact that they would not deposit funds into a trust account as required by A.R.S. §§ 44–1722 and –1723; and (6) this count appears to be essentially reiterative of the first five counts. The complaint included: a prayer for injunctive relief pursuant to A.R.S. § 44–1528; that civil penalties of $5,000.00 be assessed for each violation pursuant to A.R.S. § 44–1531, that the trial court order restoration to the victims pursuant to A.R.S. § 44–1528; and that appellees reimburse the attorney general for investigative costs and attorney's fees pursuant to A.R.S. § 44–1534.

## RULINGS BY THE TRIAL COURT

The attorney general eventually moved for summary judgment, principally upon the ground that the plans offered by appellees were generically "prearranged funeral plan agreements" within the purview of A.R.S. §§ 44–1721 to –1725 but did not comply with the requirements of that legislation. The appellees also moved for a partial summary judgment or, in the alternative, to file an assurance of discontinuance of an act or practice. See A.R.S. § 44–1530. After taking these matters under advisement, the trial court ruled by minute entry that sale by Green Acres Trust of its debentures in connection with the promotion of its funeral operations and Green Acres Memorial Gardens' cemetery business constituted the sale of a "prearranged funeral plan agreement" so that the failure to make the trust account deposits required by A.R.S. § 44–1722 violated the law and subjected appellees to the criminal sanctions of A.R.S. § 44–1725. The trial judge declined to rule on the basis of the briefs then before him whether this conduct also violated the Consumer Fraud Act so as to allow the attorney general access to the Act's enforcement provisions.

Following the initial summary judgment rulings, the attorney general made a second motion for summary judgment. This motion's major thrust was that appellees failed to disclose the fact that they were selling debentures that did not comply with the Securities Act and prearranged funeral plan agreements that did not comply with A.R.S. §§ 44–1721 to –1725. The motion was supported by a number of solicitees' affidavits, of which the following affidavit of Ralph E. Bernhardt is somewhat typical:

I, Ralph E. Bernhardt, upon my oath depose and state:

1. That a salesman from Green Acres located at 401 N. Hayden Road, Scottsdale, Arizona came to my home.

2. On February 19, 1975 I entered into an oral contract for a pre–need cremation plan.

3. That my wife and I discussed cremation plans with the salesman; we wished to pay for our cremation on a pre–need basis.

4. That the salesman did not tell us that we were buying debentures and I was unaware that I had until at least a month later. He did not explain what a debenture is.

5. That I wished to buy a prearranged cremation plan; I had no desire to buy securities of any kind.

6. That the salesman did not tell me that:

a. I was buying unregistered securities from an unregistered dealer or salesman;

b. Arizona law requires prearranged funeral plan agreements to provide for the maintenance of a trust fund and that the ones I was purchasing did not so provide;

c. The money I paid for our prearranged funeral plan agreements would not be deposited in trust as required by Arizona law.

7. That I would not have entered into the agreement had I known of these facts; no one asked me to enter into a contract that did not conform to the law.

8. That I received the documents, true and correct copies of which are attached hereto as pages 3–10 in the mail.

The appellees simultaneously moved for "complete summary judgment". They contended that the attorney general's requested injunctive relief was inappropriate because the Corporation Commission's cease and desist order was in effect and, more generally, that since there were other remedies available with respect to the alleged misconduct, relief under the Consumer Fraud Act was beyond the intent of the legislature in promulgating the Act.

The trial court, in a thorough memorandum disposing of the motions, agreed with appellees that relief under the Consumer Fraud Act was beyond the legislature's intent. The trial court noted the widespread entrustment of the regulation of various industries to various state boards and departments. The court observed that in light of such regulation, suits such as that brought against appellees presented the potential for multiple proceedings and perhaps inconsistent results and penalties. The trial court concluded that the attorney general could not maintain a consumer fraud action "where the basis of the action is a violation of some other act, the enforcement of which, on behalf of the public, has been entrusted to another agency." Although we agree with this conclusion to a point, there are certain limitations in its application.[1]

The issues in this appeal concern the preclusive effect of the Securities Act and the prearranged funeral plans legislation upon the attorney general's ability to maintain an action under the Consumer Fraud Act. Thus, we make the following preliminary observations regarding the Consumer Fraud Act. The Act was passed in 1967. The model from which it was taken was patterned in large part after the Federal Trade Commission Act, 15 U.S.C. §§ 41 to 57, although the state legislation is in some critical respects much broader and more effective in its remedial provisions. See Lovett, *State Deceptive Trade Practice Legislation*, 46 Tul.L.Rev. 724, 730 (1972); Note, *Consumer Protection by the State Attorneys General: A Time for Renewal*, 49 Notre Dame Law. 410, 412–414 (1973). The Act is designed to root out and eliminate "unlawful practices" in merchant–consumer transactions. The core of the Act, section 44–1522(A), defines "unlawful practice" as follows:

A. The act, use, or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice.

The terms of this provision are obviously quite broad and are not subject to restrictive interpretation because the Act is generally to be considered remedial in nature. *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 521 P.2d 1119 (1974).[2] The Act's most important remedial provision, section 44–1528(A), permits the attorney general to seek an injunction prohibiting such "unlawful practices" and seek restoration of monies or property obtained by such practices. To this extent, the property may be placed in the hands of a receiver. With the Act's background in mind, we turn to the issues.

## CONSUMER FRAUD ACTION BASED ON SECURITIES ACT VIOLATIONS

■ We shall first focus upon the trial court's ruling insofar as it relates to the

---

1. Notably, appellees do not in this appeal take issue with the trial court's initial ruling that their program of solicitation was in violation of A.R.S. §§ 44–1721 to –1725. Also, appellees do not challenge the Corporation Commission's ruling that sales of Green Acres Trust debentures violated the Securities Act.

2. Thus, the Arizona Supreme Court has held that the Act inferentially creates a private right of action for deceptive practices. *Sellinger v. Freeway Mobile Home Sales, Inc., supra.*

complaint's third and fourth counts alleging a violation of the Consumer Fraud Act based on appellees' failure to disclose Securities Act violations. However, we reject the trial court's broad implication that merely because the alleged illegal activity of a member of a regulated industry falls within the purview of an administrative agency, the attorney general is precluded from maintaining an action under the Consumer Fraud Act. Rather, in each case, the nature and scope of the particular administrative body's powers and responsibilities must be scrutinized in order to determine whether maintenance of a Consumer Fraud Act action was intended by the legislature.

▪ Chapter 12 of Title 44 of our Revised Statutes is known as the Securities Act. It is a comprehensive collection of statutes designed to foster the principle of full disclosure and thereby provide protection for securities purchasers. Registration of both issuers and salesmen is a key element in the regulatory scheme. See A.R.S. §§ 44–1841, –1842. To facilitate implementation of the Act's purpose and provisions, a Director of Securities is vested with rule–making and investigatory authority. See A.R.S. §§ 44–1821 to –1825. Article 13 of Chapter 12 specifically defines fraudulent practices in the purchase or sale of securities. A.R.S. §§ 44–1991 to –1995. Article 16 specifically relates to the methods for enforcing the Act's provisions. A.R.S. §§ 44–2031 to –2037. Thus, under A.R.S. § 44–2032, the Corporation Commission is empowered to order a violator to halt all illegal activities or seek the assistance of the courts or the attorney general in pursuit of this end.

Both the Securities Act and the Consumer Fraud Act protect consumers. But the Securities Act affords protection to a single type of consumer–the securities buyer. Through comprehensive and detailed legislation, our lawmakers established a method of regulating the sale of securities. Addi-

tionally, the Act sets up a complete and thorough statutory scheme for the administrative enforcement of its provisions. In essence, although not denominated as such, the Act is a self–contained consumer fraud act in the specialized field of securities. Since this legislation is so particularized and comprehensive, we cannot accept the proposition that our legislature, by enactment of the Consumer Fraud Act, intended to provide an additional avenue of relief in the situation where the charge is that one has failed to disclose that he is not in compliance with the requirements of the Securities Act.[3] Accordingly, we hold that since the legislature has under separate legislation established a comprehensive and particularized method for the regulation of the sales of securities and has provided the methods for the enforcement of the securities laws, the attorney general cannot effectively allege Securities Act violations as a basis for an action under the Consumer Fraud Act.

## CONSUMER FRAUD ACTION BASED ON VIOLATION OF PREARRANGED FUNERAL PLAN LEGISLATION

The appellant's consumer fraud contentions with respect to the alleged representations regarding appellees' prearranged funeral plan agreements stand on a completely different footing than those involving Securities Act violations. A prearranged funeral plan agreement is:

> an agreement providing for the final disposition of a dead human body under which payments are made for the purchase of personal property or services or both which are to be delivered or performed subsequent to the death of the person for whose benefit the agreement is made, except where otherwise regulated by statute or state agency.

---

**3.** We note that the term "merchandise," as defined in the Consumer Fraud Act, includes "intangibles," A.R.S. § 44-1521(5). "Intangibles" have traditionally included securities, see *People ex rel. Scott v. Cardet Int'l, Inc.*, 24 Ill.App.3d 740, 321 N.E.2d 386 (1974), the infer-

ence being that the Consumer Fraud Act was meant to encompass deceptive practices in securities. However, in light of the Securities Act's comprehensive nature, we cannot accept this inference.

A.R.S § 44–1721. This legislation requires the creation of a "separate trust account with a bank or savings and loan association", A.R.S. § 44–1722, where any funds received in payment for such a plan must be deposited within three days after receipt. A.R.S. § 44–1723. "Any person who sells, offers to sell or promotes" a prearranged funeral plan agreement not in compliance with the legislation's directives is guilty of a class two misdemeanor. A.R.S. § 44–1725.

As with the Securities Act, an administrative agency is, to a limited extent, empowered to enforce the prearranged funeral plan legislation–the State Board of Funeral Directors and Embalmers. The Board certifies the qualifications of funeral directors and licenses funeral establishments such as those operated by Green Acres Trust. A.R.S. §§ 32–1321, –1381. A funeral establishment's license may be suspended or revoked for participation in an illegal scheme for the provision of funeral services or merchandise and for violating any law, rule or regulation pertaining to trust fund deposits required in connection with prearranged funeral plan agreements. A.R.S. § 32–1383(A)(4) and (7). In addition, the Board may, either through the attorney general or the local county attorney, seek injunctive relief whenever it appears that anyone "has engaged in, or is engaged in any act, practice or transaction" in violation of either the chapter that regulates funeral directors or the laws regarding prearranged funeral plan agreements. A.R.S. § 32–1369.

■ We are of the opinion that there is a critical difference regarding the scope of the Corporation Commission's activities, through its Securities Division, under the Securities Act and those of the Board of Funeral Directors and Embalmers in enforcing the prearranged funeral plan statutes. And, this distinction demonstrates a differing legislative intent regarding a consumer fraud action based on violations of the two enactments. The Securities Act has for its basic purpose the prevention of fraud upon the consumers of securities and is designed to be prophylactic where possi-

ble and remedial when necessary. *Jackson v. Robertson*, 90 Ariz. 405, 368 P.2d 645 (1962). The Corporation Commission, through its Securities Division, maintains a substantial and ongoing investigatory effort designed to protect the public from fraud and enforce the Act's provisions. On the other hand, while the Board of Funeral Directors and Embalmers may regulate the entire spectrum of its profession's activities, its regulation is not directed at those activities which would be apt to entail fraud upon the consuming public. While the Board is charged with the duty of enforcing the statutory standards set for the profession and alerting prosecuting authorities to prearranged funeral plan legislation violations, there is nothing in Chapter 12 of Title 32 that provides it the type of substantial investigative force accorded to the Securities Division of the Corporation Commission for the investigation of frauds or possible frauds on the consuming public. *See* A.R.S. §§ 44–1811 to –1815, 44–1822 to –1825.

■ We know of no authority for the proposition that simply because an activity is clearly unlawful because contrary to positive enactment, it cannot form the basis of a charge of deceptive and unlawful practice pursuant to a statute such as our Consumer Fraud Act. Section 44–1522(B) of the Act permits us to "use as a guide [for interpreting our own act] interpretations given by the federal trade commission and the federal courts" of the Federal Trade Commission Act. We find that no such proposition has been considered, let alone approved. The fact that our Consumer Fraud Act may, in some instances, be cumulative with respect to other penal and remedial provisions available to public prosecuting authorities does not make it inapplicable. *Cf. State v. Ulmer*, 21 Ariz.App. 378, 519 P.2d 867 (1974) (defendant could be prosecuted under either credit card fraud statute or forgery statute). Thus, we will not limit the attorney general, as appellees would have us do, to the remedies provided by the prearranged funeral plan agreement legislation. Accordingly, the attorney general has effectively alleged a consumer fraud action. As-

suming a factual basis for the allegations, it was certainly a "false pretense", under the Consumer Fraud Act, for appellees to sell "debentures" which did not require the obligor to perform specific funeral services when solicitees were led to understand that they were purchasing prearranged funeral plans. Such acts would constitute an "unlawful practice" within the purview of A.R.S. § 44–1522(A), proof of which would entitle the attorney general to seek the remedies set forth in A.R.S. § 44–1528(A).[4]

## ALTERNATIVE CONTENTIONS TO SUSTAIN JUDGMENT

■ The appellees contend that judgment in their favor can be sustained on several other grounds not alluded to by the trial court in its decision. While we agree with appellees that a judgment, and even a summary judgment, will be sustained if it is correct even though rendered for the wrong reason, *City of Tucson v. Morgan*, 13 Ariz. App. 193, 475 P.2d 285 (1970), we find no basis for sustaining that part of the trial court's ruling as to which we have indicated reversal.

■ Appellees first argue in this connection that since Green Acres Trust is subject to the Corporation Commission's cease and desist order, no injunction is necessary or appropriate. We note, however, that A.R.S. § 44–1528(A) authorizes injunctive relief when a person "has engaged in" an unlawful practice. In *State ex rel. Turner v. Limbrecht*, 246 N.W.2d 330 (Iowa 1976), the court referred to the general rule that where a right for injunction arises from statute, in that case the Iowa Consumer Frauds Act, the usual grounds for injunc-

tive relief need not be established, and it is sufficient to show the conditions specified in the statute. This is the case even though a past wrong forms the basis for the injunction and there is little indication that the wrong will be repeated. *See id.* The decision as to whether actually to issue an injunction remains one for determination by the trial court in view of those allegations which are effectively set forth and supported pursuant to the Consumer Fraud Act. *See State v. Ralph Williams' North West Chrysler Plymouth, Inc.*, 82 Wash.2d 265, 510 P.2d 233 (1973). We do not find in the present record any circumstances which absolutely negate the application for injunctive relief.

■ Appellees next argue that the attorney general did not follow the investigative procedure set forth in A.R.S. § 44–1524 prior to filing a complaint in this case. Appellees have not cited to this court any authority to the effect that taking the investigatory steps referred to in section 1524 is a jurisdictional prerequisite to commencing a consumer fraud action. In any event, the record discloses an ample investigatory basis for the action. We find this argument to be without merit.

■ Appellees also contend that this litigation is inappropriate as a consumer fraud action brought by the attorney general because there are only a few persons, perhaps 14 in number, who have indicated a desire to obtain relief. This contention is also without merit. The basic purpose of the Consumer Fraud Act's enforcement provisions is protection of the public in general. That is a prospective consideration. We agree with the attorney general that the

---

4. The parties in their briefs have argued for and against the principle of "primary jurisdiction" that has been frequently applied in the federal courts. *See United States v. Radio Corp. of America*, 358 U.S. 334, 79 S.Ct. 457, 3 L.Ed.2d 354 (1959). By this principle, deference is given to administrative expertise. It has thus far not been necessary to develop this concept on the state level here in Arizona. We see no reason to consider this generally salutary principle in this case because, as we have stated, our legislature has explicitly vested the attorney general with the authority to civilly prose-

cute consumer frauds and we are unable to perceive that the Board of Funeral Directors and Embalmers has been recognized as having particular expertise in that area. In fact, there is an affidavit in the record of Keith Rottman, president of the Board of Funeral Directors and Embalmers, stating in effect that the Board feels that the public interest is best served by the attorney general's consumer fraud action. Although such an expression is by no means binding, it does indicate the lack of administrative expertise in this specific area.

Consumer Fraud Act does not require a "mass" or any particular number of aggrieved parties to maintain an action.

We do note, however, appellees' statement that a class action on behalf of persons aggrieved has been commenced. Of course, the public interest is best served when parallel legal proceedings, such as the present case and a lengthy class action, can be litigated with as much complementary expediency as may be effectuated. Under such circumstances, it is for the attorney general, in the first instance, and ultimately the trial court, to assess the class action's impact in determining whether the independent enforcement proceedings, and the remedies sought therein, are necessary.

■ Appellees next argue that the consumers' detrimental reliance was neither alleged nor established. The short answer to this argument is that reliance or actual deception or damage is not a prerequisite to a consumer fraud action brought by the attorney general. A.R.S. § 44–1522(A). *See Peery v. Hansen*, 120 Ariz. 266, 585 P.2d 574 (App.1978) (the right to rely is not a necessary element in a private action under the Consumer Fraud Act).

■ Appellees further contend that the necessary element of intent was neither alleged nor established. *See A.R.S. § 44–1522.* Intent is, of course, an issue of fact. Our review of the record at this stage of the proceedings indicates that the requisite intent has been effectively alleged and adequately shown by inference. Ordinarily, the question of intent is to be resolved by the trier of fact and not by summary judgment. *See Poller v. Columbia Broadcasting System*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Grain Dealers Mutual Insurance Co. v. James*, 118 Ariz. 116, 575 P.2d 315 (1978). This question is to be resolved upon remand of this case.

■ Appellees lastly contend that the attorney general was not diligent in prosecuting the action and would not clarify the theory of his action. After reviewing the record, we find that the attorney general's theory was adequately articulated and presented. Additionally, we find no basis in the record for sustaining the judgment on a theory of laches or lack of diligence on the part of the attorney general.

■ Since this is a case of first impression in this jurisdiction, we deem it advisable to summarize our principal holding. We hold that pursuant to the broad terms of the Consumer Fraud Act, the attorney general has plenary power to enforce by injunctive and other specified remedies that enactment's provisions proscribing "unlawful practices" in the consumer field except where an exemption has been expressly articulated, *see A.R.S. § 44–1523*, and except where other particularized and comprehensive legislation pervades a specialized field of consumer protection.

In the instant case, we are of the opinion that the Consumer Fraud Act was not intended to be a substitute for or to supplement the comprehensive regulatory and enforcement provisions of the Securities Act. It is equally clear that the scope of the Consumer Fraud Act's operation is not limited by the existence of the Board of Funeral Directors and Embalmers, which has a broad range of duties but limited resources with which to provide comprehensive consumer protection.

For the foregoing reasons, the judgment of the superior court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

JACOBSON and OGG, JJ., concur.