688 P.2d 658

**GREEN ACRES TRUST, an Arizona corporation and Green Acres Memorial Gardens, Inc., an Arizona corporation, Plaintiffs-Appellants,**

v.

**May LONDON; Arthur W. Yoder; Cecil M. Yoder; Michael J. Valder and Jane Doe Valder, husband and wife; Harry E. Craig and Jane Doe Craig, husband and wife; David J. Rich and Jane Doe Rich, husband and wife; and Douglas G. Martin, Defendants-Appellees.**

**No. 1 CA–CIV 5145.**

Court of Appeals of Arizona,
Division 1, Department A.

April 14, 1983.

Gorodezky, Marron & Diamond by John B. Marron, Phoenix, for plaintiffs-appellants.

Goldstein & Kingsley, Ltd. by Philip T. Goldstein, Phoenix, for defendants-appellees.

## OPINION

CONTRERAS, Judge.

At issue in this defamation action is whether the trial court erred in setting aside the judgment and vacating the default entered against one of the defendants, and thereafter granting summary judgment in favor of all defendants. We find no error and therefore affirm.

## FACTUAL BACKGROUND

On March 8, 1976, appellee London, through her attorneys, appellees Valder and Martin, and appellees Yoder, through their attorneys, appellees Craig and. Rich, filed a class action complaint against appellants in Maricopa County Superior Court. That same day, an article appeared in the Phoenix Gazette. The article was the result of a meeting held the previous Friday, March 5, 1976, at the law offices of appellees Craig and Rich. Present at that meeting was Edythe Jensen, a reporter for the Phoenix Gazette, and all appellees, except the Yoders.

One year later, on March 4, 1977, appellants filed in Maricopa County Superior Court their "Complaint for Defamation" against all appellees. The complaint specified four statements contained in the newspaper article of March 8, 1976, which were allegedly defamatory. We quote in part from the complaint:

The Defendants, acting in concert, did hold said news conference with the purpose that the readers of the said newspaper would receive the following defamatory statements made by the Defendants:

1. That the State Attorney General's office had been investigating the Plaintiffs for the purpose of filing criminal charges against them in the areas of security violations and fraud.

2. That the Plaintiffs had "bilked" up to five thousand people.

3. That the Plaintiffs had deliberately violated state laws.

4. The Plaintiffs had "intentionally inflicted emotional distress on its victims."

The defendants made such false statements knowing the same were false or made them with reckless disregard to the truth. The Plaintiffs are therefore entitled to punitive damages in the sum of ONE MILLION DOLLARS ($1,000,-000.00).

On March 11, 1977, appellee London was personally served with a copy of the summons and complaint. She did not file an answer, and a default judgment was entered against her on April 20, 1977. A motion to set aside the judgment and vacate the default was filed on September 6,

1977, and granted on October 26, 1977.[1] On May 24, 1979, appellants filed a motion to vacate the order setting aside the default judgment which had been entered against appellee London. Appellants' motion was denied by minute entry dated June 4, 1979, which provided, in pertinent part:

> Plaintiffs' Motion to Vacate Order of October 26, 1977 setting aside the default previously entered against defendant London on the grounds of intrinsic fraud having been under advisement and the Court having considered the written and oral arguments of counsel, Rule 60C requirements and the record to date (particularly deposition of defendant London taken January 24, 1978), the Court finds the six months requirement was not met by plaintiff and that subsequent proceedings indicate a waiver of any right in regard to this particular request,

> IT IS THEREFORE ORDERED denying said motion.

On May 2, 1979, lay appellees London and the Yoders filed a motion for summary judgment, which was granted by the June 4, 1979, minute entry, which provided, in pertinent part:

> Defendant London & Yoders' Motion for Summary Judgment likewise having been under advisement and the Court having looked at the record to date in light of the allegations of the Complaint, the Court cannot find any evidence whatsoever that these defendants or anyone in their legal behalf made any one of the four allegedly defamatory statements as stated in the Complaint.

> IT IS THEREFORE ORDERED granting said defendants' Motion for Summary Judgment.

On May 29, 1979, attorney appellees Valder, Craig, Rich and Martin filed a motion for summary judgment. The motion was granted by a minute entry dated June 21, 1979, which did not set forth the reason for granting the motion. The two June 1979 minute entries were reduced to a written judgment which was signed on July 17, 1979. The trial court determined that the complaint alleged only one claim, and therefore struck proposed Rule 54(b) language from the judgment, and entered final judgment disposing of the entire matter. Appellants' motion for a new trial was denied, and this appeal follows.

## I

### THE LONDON DEFAULT

In moving to set aside the judgment and vacate the default, appellee London alleged excusable neglect, under Rule 60(c)(1), Arizona Rules of Civil Procedure. The bases for excusable neglect were that appellee London did not understand the legal significance of the papers served on her, believed that they related to the class action against Green Acres and not to any action by Green Acres against her, and was assured by Craig's secretary that appellee Craig would take care of the matter; and appellee London was preoccupied with an upcoming trip to Canada.

It is well established that default judgments are not favored, and that the trial court's decision to set aside the judgment and vacate the default will not be disturbed absent an abuse of discretion. *Richas v. Superior Court of Arizona,* 133 Ariz. 512, 652 P.2d 1035 (1982); *Union Oil Co. of California,* 131 Ariz. 285, 640 P.2d 847 (1982); *Coconino Pulp and Paper Co. v. Marvin,* 83 Ariz. 117, 317 P.2d 550 (1957). Appellants argue that London's motion, although made within six months after entry of the default judgment, was not made within a "reasonable time" as required by Rule 60(c). We disagree. Although the term is not defined in Rule 60, what constitutes a "reasonable time" is dependent in large measure on the underlying facts presented and the absence (or presence) of prejudice to the judgment

---

1. After the order setting aside the judgment and vacating the default, the answer tendered by appellee London with her motion to set aside the judgment and vacate the default was accepted by the court. Answers on behalf of the other named appellees-defendants were timely filed. Appellees were represented by the same counsel in this litigation.

creditor. By granting appellee London's motion, the trial court implicitly determined the motion had been filed within a "reasonable time". In view of the underlying facts presented to support excusable neglect along with the absence of prejudice to appellants, we conclude that the trial court did not abuse its discretion in setting aside the judgment and vacating the default.

Appellants, in their May 24, 1979, motion to vacate the order setting aside the judgment and vacating the default, asserted that the affidavits which accompanied appellees' September 6, 1977, motion to set aside the judgment and vacate the default were "laced with perjury." That assertion was based on what appellants perceived as inconsistencies between the supporting affidavits and London's later deposition testimony. Appellants argue that those inconsistencies justified relief from the order because of the fraud, misrepresentation, or misconduct of an adverse party under Rule 60(c)(3), Arizona Rules of Civil Procedure. After reviewing the record, we conclude that these "inconsistencies" reflected in London's affidavit statements and her subsequent deposition testimony do not equate to fraud. At most, there is some indication of an elderly lady's lapse of recollection. We find no abuse of discretion by the trial court either in granting London's motion to set aside the judgment and vacate the default or in denying appellants' subsequent motion to vacate the trial court's previously entered order.

### LIBEL OR SLANDER

It is not entirely clear whether appellants are claiming

1. that the printed statements in the newspaper article were defamatory (i.e., libelous) and that appellees were responsible for the publication of such statements; or

2. that oral statements made by appellees to newspaper reporter Jensen were defamatory (i.e., slanderous).

We believe that the two issues, though closely related, are logically and legally distinguishable. A liberal construction of appellants' complaint leads us to conclude that the first claim was alleged and there is authority for the proposition that appellees could be liable for the defamatory printed statement if they furnished the information on which that statement was based. As stated in 53 C.J.S. Libel & Slander § 151(E):

*Furnishing information.* One who furnishes to a newspaper reporter information of a defamatory character with the request that it be published, or with the object of procuring its publication, is liable for the publication. It has been held that, where defendant furnished the information on which a libel was based, and documents in support thereof, to a newspaper reporter, knowing that the latter intended to publish the story, he caused the defamatory matter to be published, although the reporter solicited the information and defendant did not request that it be published. On the other hand, it has also been held that the mere answering of questions of newspaper reporters is not sufficient to charge a person with responsibility for the publication of the answers where they were published without either his express or implied consent or authority, although he knew the interrogators were reporters; but he might be held liable for slander.

The summary judgment proceedings revolved around the second claim, and summary judgment was apparently granted because appellants failed to present evidence that appellees had made slanderous statements to newspaper reporter Jensen. Likewise, the appellate briefs deal with the second claim. Consequently, we believe that the first claim has not been preserved on appeal; we do not address the issue of whether defamation liability on the part of private (i.e., non-media) individuals could be based solely on the printed statements in a newspaper with no evidence of the underlying oral statements. As presented to us on review, the issue is whether certain oral statements allegedly made by the appellees are slanderous, and not whether the newspaper article is libelous.

## II

### SUMMARY JUDGMENT IN FAVOR OF LONDON AND YODERS

In moving for summary judgment, appellees London and the Yoders argued that they had not defamed appellants because they had not published the statements and/or because the statements were not defamatory. In granting the motion, the trial court accepted appellees' first contention, i.e., that neither London nor the Yoders, or anyone acting in their legal behalf, made any of the four statements.

Appellants have never specifically alleged that either London or the Yoders made any of the four allegedly defamatory statements to newspaper reporter Jensen. The Yoders were not even present at the meeting during which the attorneys supposedly made the alleged defamatory statements. Therefore, they would be liable for defamation only if vicariously responsible for the conduct of their attorneys. In their motion for summary judgment, appellees London and the Yoders briefly suggested that they had not authorized the statements, but the bulk of the motion is devoted to the argument that the statements, even if authorized, were privileged. Appellants' response to the motion for summary judgment likewise treated the issue of vicarious liability only superficially, though the argument is more fully developed on appeal.

■ It is established in Arizona that an attorney, in his relation to his client, is an independent contractor rather than a servant. *Buehman v. Smelker*, 50 Ariz. 18, 68 P.2d 946 (1937). Therefore, authorities imposing vicarious liability, under a theory of respondeat superior, on the master for defamation by the servant within the scope of employment are not controlling here. *E.g.*, Restatement (Second) of Agency § 247 (1957); *Phoenix Newspapers, Inc. v. Church*, 24 Ariz.App. 287, 537 P.2d 1345 (1975), *appeal dismissed*, 425 U.S. 908, 96 S.Ct. 1502, 47 L.Ed.2d 759, *reh'g. denied*, 425 U.S. 985, 96 S.Ct. 2193, 48 L.Ed.2d 811

(1976); W. Prosser, Law of Torts § 113, at 770 (4th ed. 1971).

On occasion, it has been held that the attorneys' status as an independent contractor is sufficient to absolve the client of vicarious liability for the attorney's defamation. A federal district court, applying Colorado law, held that retained counsel is an independent contractor upon whose skill, expertise, professional judgment, and integrity the client relies.

> Clients are not insurers of actions taken by attorneys, despite the fact that such actions are taken on the client's behalf. An attorney's combination of education, experience and code of ethics effectively places the responsibility on him or her for any tortious or unethical conduct. The attorney's license and independent status likewise create duties owed by the attorney not only to the client but also the public and to the courts.

*Williams v. Burns*, 463 F.Supp. 1278, 1285 (D.Colo.1979).

The *Buehman* use of the term "independent contractor" is not equivalent to the *Williams* use of the same term. *Buehman* did not involve the liability of a client to some third party for the torts of the attorney. *Buehman* also referred to an attorney as the "agent" of the client. Restatement (Second) of Agency § 2(3) states that an independent contractor may or may not be an agent. Later Arizona cases have reiterated that the attorney-client relationship is one of agent and principal, and that the rules of agency apply to the relationship. *Balmer v. Gagnon*, 19 Ariz.App. 55, 504 P.2d 1278 (1973); *Arizona Title Ins. and Trust Co. v. Pace*, 8 Ariz.App. 269, 445 P.2d 471 (1968); *accord* Restatement (Second) of Agency § 1, comment e.

Restatement (Second) of Agency §§ 250 *et seq.* define the principal's liability for the torts of his non-servant agent. Section 254 provides:

§ 254. Defamation

A principal is subject to liability for a defamatory statement by a servant or other agent if the agent was authorized,

or if, as to the person to whom he made the statement, he was apparently authorized to make it.

Thus, London and the Yoders would be vicariously liable for the allegedly defamatory statements of their attorneys only if such statements were actually or apparently authorized by them.

■ We have searched appellants' response to London and Yoders' motion for summary judgment, their other pleadings, and their briefs on appeal for allegations or evidence of specific facts which would indicate such authorization. We have found none. A "blanket allegation" that the client authorized or ratified the alleged defamation is insufficient to support a claim of client liability. *Williams v. Burns.* In a variety of factual settings, courts of other jurisdictions have found neither prior authorization nor subsequent ratification by the client. *Sullivan v. Metropolitan Casualty Ins. Co. of N.Y.*, 256 F. 726 (5th Cir.1919); *Williams v. Burns; Chisler v. Randall*, 124 Kan. 278, 259 P. 687 (1927); *B.F. Goodrich Rubber Co. v. Holland*, 159 Miss. 346, 131 So. 882 (1931); *Chancey v. Wilson*, 378 S.W.2d 395 (Tex.Civ.App.1964) ("malicious letters"); 53 C.J.S. Libel and Slander § 150.

■ In the absence of any evidence of either authorization or ratification, we conclude that there was no genuine issue of material fact that lay appellees London and the Yoders were entitled to judgment as a matter of law, and that summary judgment in their favor was proper, regardless of the liability of their attorneys.

### III

### SUMMARY JUDGMENT IN FAVOR OF ATTORNEYS

In moving for summary judgment, attorneys Valder, Craig, Rich and Martin argued that there was no probative evidence that they had published any of the four statements, that their distribution of the complaint to Jensen was absolutely privileged, and that their oral communications to Jensen were qualifiedly privileged. As previously noted, neither the minute entry nor the order granting these appellees' motion for summary judgment specified the reasons.

### PUBLICATION OF THE FIRST STATEMENT

The first allegedly defamatory statement as it appeared in the newspaper article was:

THE STATE ATTORNEY General's office has been investigating the matter for possible criminal charges in the areas of securities violations and fraud.

The corresponding defamatory statement as alleged in appellants' complaint was:

1. That the State Attorney General's Office had been investigating the Plaintiffs [appellants] for the purpose of filing criminal charges against them in the areas of security violations and fraud.

The statement was not attributed to any of the appellees, nor did it purport to be even a paraphrase of any statement made by any of the appellees. There was no evidence in the record that anyone at the meeting made such a statement to Jensen, and appellees' class action complaint contained no mention of the matter. It is just as likely that the printed statement was based on information from sources completely independent of all appellees. Appellants concede that, prior to the meeting, the Attorney General had brought a civil complaint against them alleging securities fraud.[2] That complaint was a matter of public record. Additionally, the reporter, Edythe Jensen, testified in her deposition that she did not remember the source of her information, and that she talked to someone from the Attorney General's office almost every day.

■ A plaintiff has the burden of proving, inter alia, the publication by the defendant of the defamatory communication. Restatement (Second) of Torts § 613 comment d:

2. *See People ex rel. Babbitt v. Green Acres Trust,* 127 Ariz. 160, 618 P.2d 1086 (Ct.App.1980).

d. *Publication.* The plaintiff has the burden of proof on the question of the publication of the defamatory matter. To satisfy this burden, it is necessary that he show not only that the defendant spoke or wrote or otherwise prepared the defamatory matter or made it available to a third person, but also that the third person understood its significance.

Neither the complaint nor appellants' response to the motion for summary judgment ever alleged publication of this particular offending statement by any of the appellees. Absent evidence that any of the attorneys either made an oral statement or otherwise furnished this information underlying this particular alleged defamatory statement, summary judgment in their favor was proper.

■ We have accepted appellees' contention that there was no probative evidence of publication by them, and therefore no liability for defamation as that contention relates to the first statement. But we are unable to accept such contention as it relates to any of the other three statements. Appellees further claim that each of the remaining three allegedly defamatory statements in the newspaper article are nothing more than Jensen's paraphrases of portions of appellees' class action complaint and did not originate in the conversation between Jensen and the attorneys. Assuming, arguendo, that the class action complaint was privileged, that would not necessarily dictate summary judgment in favor of the attorneys on the issue of defamation liability since, as we read the record before us, there appears to be an issue of fact as to whether the printed statements were Jensen's paraphrases of the class action complaint or were based on oral statements by the attorneys.

### PUBLICATION OF THE SECOND STATEMENT

The second allegedly defamatory statement as it appeared in the newspaper article was:

The lawyers, who said they believe up to 5,000 people may have been bilked by the funeral company, are seeking others to join in the suit against Green Acres.

The corresponding defamatory statement as alleged in appellants' complaint was:

2. That the Plaintiffs had "bilked" up to five thousand people.

Appellants' complaint specifically objected to the term "bilked" as defamatory, but there is no evidence that that particular term was ever used by any of the appellees, nor does the article so claim. In her deposition, Jensen stated that the statement in the article was a "paraphrase", that she was familiar with the term "bilked", and that she could not remember whether "the lawyers" used the term "bilked" or not.

Appellees claim that the above testimony, together with the fact that the class action complaint alleged a class of not less than 2,500 persons, was sufficient to demonstrate that the printed statement was drawn directly from the privileged complaint and that none of the attorneys had made a statement to Jensen that up to 5,000 persons had been "bilked". We disagree, and believe that the testimony does no more than raise a fact issue as to whether any of the attorneys made such a statement.

### PUBLICATION OF THIRD STATEMENT

The third allegedly defamatory statement as it appeared in the newspaper article was:

"This appears to be a deliberate violation of state law by Green Acres," said Rich.

The corresponding defamatory statement as alleged in appellants' complaint was:

3. That the Plaintiffs had deliberately violated state laws.

The statement as it appears in the newspaper article purports to be a direct quote, and is attributed to appellee Rich. In her 1978 deposition, Jensen refused to state unequivocally that Rich had spoken the exact words within the quotation marks and stated only that she tried to report quotes accurately. In his affidavit, Rich expressly

denied making the quoted statement. Appellees have argued that the purported quote was actually Jensen's paraphrase of portions of the class action complaint, specifically the allegation that appellants intentionally withheld from customers material facts relating to the sales. We are not persuaded that allegations in the class action complaint and the newspaper statement are so similar that the former was undoubtedly the source of the latter. From our review of the record, we believe that there was a genuine issue of material fact as to whether or not Rich uttered the quoted statement.

## PUBLICATION OF FOURTH STATEMENT

The fourth allegedly defamatory statement as it appeared in the newspaper article was:

Martin said the punitive damages are asked because plaintiffs contend Green Acres has intentionally inflicted emotional distress on its victims.

The corresponding defamatory statement as alleged in appellants' complaint was:

4. The Plaintiffs had "intentionally inflicted emotional distress on its victims."

The statement as it appeared in the newspaper article was attributed to appellee Martin but, again, did not purport to be a verbatim quote. Jensen conceded that it was a paraphrase. Appellees have argued that the printed statement was a paraphrase, not of any oral statement by Martin but of portions of the class action complaint, specifically the allegation in paragraph 18 that appellants' actions were "outrageous, willful, wanton and in reckless disregard of the rights of the members of the class."

As with the previous statement, we are not persuaded that the class action complaint and the newspaper statement are so similar that the former was undoubtedly the source of the latter. From our review of the record, we believe that there was a genuine issue of material fact as to whether or not Martin uttered the statement.

## DEFAMATORY NATURE OF STATEMENTS

Neither the second nor the fourth statement purports to be a direct quote, but that fact does not affect the defamatory nature of the statements as reported. Each of the statements, direct quote or not, is prefaced with qualifying words: "believe", "contend", "appears". The defamatory nature of the statements is not affected thereby.

The Restatement (Second) of Torts § 566 and illustration (4) thereto offer the following summary:

§ 566. Expressions of Opinion

A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.

(4) If the defendant expresses a derogatory opinion without disclosing the facts on which it is based, he is subject to liability if the comment creates the reasonable inference that the opinion is justified by the existence of unexpressed defamatory facts. It makes no difference whether this is explained by holding that there was thus a publication of false, defamatory facts (thus making § 565 applicable) or that an expression of a mixed opinion can itself be a defamatory communication.

In a similar, but somewhat clearer, vein, 50 Am.Jur.2d, Libel and Slander, § 14, states:

Although defamatory communications usually consist of statements of fact, and statements merely representing a difference of opinion between the plaintiff and the defendant usually are not actionable, an expression of opinion or of a suspicion or belief may be actionable. For example, the statement "I have every reason to believe," or "I believe" that the plaintiff has committed a crime, is actionable even though it is not a positive assertion. So also, the fact that a defamatory statement is prefaced by the words "it is alleged" does not deprive it of its actionable character. Similarly, the use of the words "it is reported" has been declared to be equivalent to the assertion that

there is a well-founded report which the publisher, after due inquiry and investigation, believes to be true, and hence to amount to a direct charge.

 It is established that an utterance is slanderous per se and actionable, without a need to plead or prove special damages, when its publication tends to injure a person in his trade or business, or imputes commission of a crime involving moral turpitude. *Modla v. Parker,* 17 Ariz.App. 54, 495 P.2d 494 (1972); Restatement (Second) of Torts §§ 570, 571, 573. All three statements are thus defamatory.

Appellee Rich's statement, as reported, is not an unequivocal accusation of commission of a crime, but instead is prefaced by "This appears...." However, such prefatory words do not render the statement non-defamatory. Comment c to § 571 states:

> It is not necessary that the defamer charge any particular criminal offense either by name or description, if the words used imply some crime of the type stated in Clauses (a) and (b). Neither is it necessary that the defamer directly charge the other with the criminal offense, or that the charge be made as of the speaker's own knowledge or belief. If the imputation is sufficiently made, the defamer is liable although he expresses his own doubt as to the truth of the charge or even if he expressly states his disbelief in it. So too, the repetition of an imputation made by a third person is actionable although the defamer attributes the charge to the third person. (See § 578).

and offers the following illustration:

> 2. A says to B, "It is the general opinion of the people in C's neighborhood

that he burned D's house." A has charged C with a crime.

Our analysis with respect to the second statement likewise applies to the third and fourth alleged defamatory statements. Since we conclude (1) that there were genuine issues of fact as to whether appellees, in addition to giving Jensen a copy of the class action complaint, made statements which may have been the basis for the allegedly defamatory statements in the newspaper article and (2) that the alleged statements were slanderous per se, then summary judgment in favor of the attorneys was not warranted unless the statements were privileged. This necessitates a discussion of the privileges here involved.

## ABSOLUTE PRIVILEGE FOR PLEADINGS

Arizona courts have recognized that the absolute "judicial" privilege based on the common law and Restatement (Second) of Torts §§ 586 and 587 [3] extends to defamatory statements contained in the pleadings themselves, *Sierra Madre Development, Inc. v. Via Entrada Townhouses Assoc.,* 20 Ariz.App. 550, 514 P.2d 503 (1973), in a lis pendens filed to give notice of underlying litigation, *Stewart v. Fahey,* 14 Ariz. App. 149, 481 P.2d 519 (1971), or in a complaint to the State Bar alleging unethical conduct on the part of an attorney, *Drummond v. Stahl,* 127 Ariz. 122, 618 P.2d 616 (Ct.App.1980).

 Whether the privilege likewise extends to the dissemination to the media, without comment, of a privileged pleading

**3.** § 586. Attorneys at Law

An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

§ 587. Parties to Judicial Proceedings

A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding. Since the texts of the two sections are virtually identical, and the comments largely identical, we will make no distinction between the privilege of an attorney and the privilege of a party.

is a question of first impression in this jurisdiction. Arizona will follow the Restatement (Second) of Torts in the absence of authority to the contrary. *See MacNeil v. Perkins*, 84 Ariz. 74, 324 P.2d 211 (1958); *Barnum v. Rural Fire Protection Co.*, 24 Ariz.App. 233, 537 P.2d 618 (1975). Arizona courts have relied on the Restatement to fashion appropriate rules in defamation cases. *See Ronwin v. Shapiro*, 657 F.2d 1071 (9th Cir.1981).

*Identity of Recipient*

Appellants rely on *Asay v. Hallmark Cards, Inc.*, 594 F.2d 692 (8th Cir.1979), for the proposition that dissemination to the media is not privileged under the Restatement (Second) of Torts §§ 586 and 587. We decline to follow *Asay* for the following reasons.

*Asay*, in holding that "[p]ublication to the news media is not ordinarily sufficiently related to a judicial proceeding to constitute a privileged occasion," in our opinion errs in its interpretation and application of the last clause of §§ 586 and 587. At 697. It is the defamatory communication itself, i.e., its *content*, and not the manner of its publication, which must have "some relation to the proceeding." As stated in comment c to § 587:

> c. *Relation of statement to proceedings.* It is not necessary that the defamatory matter be relevant or material to any issue before the court. It is enough that it have some reference to the subject of the inquiry. Thus, while a party may not introduce into his pleadings defamatory matter that is entirely disconnected with the litigation, he is not answerable for defamatory matter voluntarily or included by way of surplusage in his pleadings if it has any bearing upon the subject matter of the litigation. The fact that the defamatory publication is an unwarranted inference from the alleged or existing facts is not enough to deprive the party of his privilege, if the inference itself has some bearing upon the litigation.

*Asay* stated in so many words that it was the "content of the statement" which must have some relation to the proceeding, but then turned around and held that the dissemination of the pleading was not privileged because the *manner of communication* had insufficient relation to the proceeding. We fail to perceive the logic of that conclusion, nor can we find anything in either the text of Restatement (Second) of Torts §§ 586 and 587 or the comments thereto in support of the *Asay* proposition that the "pivotal factor" in determining whether a communication is privileged is the identity of the recipient of that communication. At 697.

In the case before us, once the class action complaint was filed, it was a matter of public record, which Jensen could have obtained from the clerk of the court. Or Jensen could have asked appellees whether they had filed a complaint, to which appellees could have answered affirmatively. Neither of those occurrences would give rise to defamation liability on the part of appellees. We are unable to draw any principled distinction between those occurrences and the direct dissemination of the class action complaint, by either attorney or party, to the media.

*Time of Communication*

Nor would the fact that the complaint was disseminated to the media before it was filed with the court defeat the privilege. To hold otherwise would render the "preliminary to" clause of Restatement (Second) of Torts §§ 586 and 587 a nullity. The meaning of that clause is set forth in comment e to each section:

> e. As to communications preliminary to a proposed judicial proceeding, the rule stated in this Section applies only when the communication has some relation to a proceeding that is contemplated in good faith and under serious consideration. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered.

*Asay* states that comment a of § 586 "elucidates the narrowness of the scope of judicially privileged occasions...." At 697. We disagree. Comment a emphasizes the breadth of the privilege, and the examples of privileged occasions are not meant to be exhaustive. The examples of the "institution of a judicial proceeding" and the "conduct of the litigation" in no way restrict the privilege for "preliminary communications" as set forth in comment e.

For the foregoing reasons, we hold that a party to a judicial proceeding, or an attorney representing such a party, is absolutely privileged to disseminate pleadings directly to the media, without comment, which contain defamatory matter concerning another if the judicial proceeding has already been instituted or is contemplated in good faith and under serious consideration.

## PRIVILEGE FOR OTHER COMMUNICATIONS

Our conclusion that dissemination of the class action complaint to a newspaper reporter was absolutely privileged is not entirely dispositive of the matter since, as noted above, there was a dispute as to whether the newspaper statements were drawn from the class action complaint itself or were based on comments made by the attorneys. Consequently, we must further define the scope of the absolute privilege under §§ 586 and 587.

Those sections do not confine the privilege to the pleadings themselves, but extend the privilege to "communications". While that term is not defined by the Restatement, one type of "communication" to which the absolute privilege has consistently been held to extend is conferences with, or letters to, counsel for the opposing party or prospective opposing party. Restatement (Second) of Torts § 586 comment a; § 586 annot. (1977); Annot., 36 A.L.R.3d 1328 (1971). Although the reporter's note in the Restatement (Second) of Torts, app. § 586, states that the absolute privilege does not extend to a press conference, we note that this statement is not part of the

text of § 586 and in fact is based on three decisions which do not interpret § 586 in a manner dispositive to the question presented by this appeal. *See Foster v. Pearcy,* 270 Ind. 533, 387 N.E.2d 446, *cert. denied,* 445 U.S. 960, 100 S.Ct. 1646, 64 L.Ed.2d 235 (1979); *Kennedy v. Cannon,* 229 Md. 92, 182 A.2d 54 (1962); and *Barto v. Felix,* 250 Pa.Super. 262, 378 A.2d 927 (1977), *appeal dismissed,* 487 Pa. 455, 409 A.2d 857 (1980).

*Foster v. Pearcy* dealt with prosecutorial immunity and did not even address the issue of judicial privilege which is present here. *Kennedy v. Cannon* cited the original Restatement of Torts § 586 comments a and c for the proposition that a communication, to be privileged, must be directed to a judge, attorney, party, or witness. We do not believe that Restatement (Second) of Torts § 586 dictates that conclusion. We believe that *Barto v. Felix* confused the issues of immunity and privilege in holding that a public defender had exceeded his qualified immunity by making statements known to be false or made in reckless disregard of the truth. Spaeth J., dissenting, concluded that statements to a reporter, reiterating the contents of a brief, were absolutely privileged since they were made in the context of a judicial proceeding. Such communications "represent legitimate methods of furnishing to the public information that is of record." 378 A.2d at 936.

A conclusion similar to that set forth in the *Barto* dissent was reached in *Johnston v. Cartwright,* 355 F.2d 32 (8th Cir.1966), where it was held that an attorney's allegedly slanderous statement to a newspaper reporter (confirming an allegedly libelous advertisement in the paper) was absolutely privileged, even though no litigation was pending at the time of the statement and the attorney knew so. Nevertheless the court noted that the statements were made in the "heat of controversy" when "[a]ll signs pointed to incipient litigation," and that "§ 586 of the Restatement refers pointedly to an attorney's 'communications preliminary to a proposed judicial proceeding'." 355 F.2d at 37.

■ *Johnston* was distinguished in *Asay.* For reasons explained earlier, we decline to follow *Asay.* In accord with *Johnston,* we hold that defamatory communications concerning impending litigation are absolutely privileged, whether made to the news media or to a prospective participant in the litigation, provided it has some relation to the proceeding. We reiterate § 586 of the Restatement (Second) of Torts:

§ 586. Attorneys at Law

An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

We believe that the privilege is sufficiently restricted by the § 586 requirements that the communication be "preliminary to" the litigation and that "it has some relation to the proceeding." After carefully reviewing the entire record, it is our opinion that the attorneys' statements in the present case (assuming such statements were made) were well within these Restatement parameters and therefore hold that the statements were absolutely privileged.

### CONDITIONAL PRIVILEGE

Appellees have also claimed that their communications to newspaper reporter Jensen were conditionally or qualifiedly privileged under Restatement (Second) of Torts § 596:

§ 596. Common Interest

An occasion makes a publication conditionally privileged if the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know.

Appellees claim that, in seeking publicity for the class action, they were attempting to reach other potential class members—persons having an important common interest with London and the Yoders.

■ Appellants contend that appellees abused any conditional privilege by excessive communication under Restatement (Second) of Torts § 604:

§ 604. Excessive Publication

One who, upon an occasion giving rise to a conditional privilege for the publication of defamatory matter to a particular person or persons, knowingly publishes the matter to a person to whom its publication is not otherwise privileged, abuses the privilege unless he reasonably believes that the publication is a proper means of communicating the defamatory matter to the person to whom its publication is privileged.

Comment:

b. ... On the other hand, when the method of communication is unnecessary and unsanctioned by a custom based on ordinary necessities of business, the publication of the defamatory matter to persons not privileged to receive it that is incidental to those methods is not privileged.

Appellants argue that since an alternative method of providing notice to class members is provided by Rule 23(c), Arizona Rules of Civil Procedure,[4] and since the communication involved here is prohibited by Rule 29(a), Rules of the Arizona Supreme Court, DR 7–107(G),[5] the communi-

---

**4.** 23(c) Determination by order whether class action to be maintained; notice; judgment; actions conducted partially as class actions.
(2) In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

**5.** DR 7–107. Trial Publicity
(G) A lawyer or law firm associated with a civil action shall not during its investigation

cation is unnecessary and unsanctioned and therefore excessive, so as to defeat any qualified privilege. We disagree. Under § 604, excessive publication means publication to an unprivileged recipient. As we noted earlier, the issue on appeal is appellees' communication or publication to Jensen (slander) and not the newspaper's republication to its readers (libel). Therefore, the only recipient at issue is Jensen. If publication to Jensen was privileged, there can have been no excessive publication. Although appellees have not developed a claim of privilege under § 595,[6] we conclude that publication to Jensen was privileged because the information affected an important interest of Jensen's, i.e., investigating and reporting purported fraudulent business practices, and the comments were made in response to Jensen's requests for information.

Appellants also contend that appellees abused whatever conditional privilege attached to their communications to Jensen.

Appellants rely on *Peagler v. Phoenix Newspapers, Inc.*, 114 Ariz. 309, 560 P.2d 1216 (1977), and Restatement (Second) of Torts § 580B:

§ 580B. Defamation of Private Person
One who publishes a false and defamatory communication concerning a private person, or concerning a public official or public figure in relation to a ... private matter ... is subject to liability, if, but only if, he

(a) knows that the statement is false and that it defames the other,

(b) acts in reckless disregard of these matters, or

(c) acts negligently in failing to ascertain them.

■ Appellants' reliance on *Peagler* and § 580B is misplaced. Those authorities establish the standard of liability, not the standard for abuse of a conditional privilege. In *Antwerp Diamond Exch., Inc. v. Better Bus. Bur. of Maricopa Co.,*

---

or litigation make or participate in making an extrajudicial statement, other than a quotation from or reference to public records, that a reasonable person would expect to be disseminated by means of public communication and that relates to:

(1) Evidence regarding the occurrence or transaction involved.

(2) The character, credibility, or criminal record of a party, witness, or prospective witness.

(3) The performance or results of any examinations or tests or the refusal or failure of a party to submit to such.

(4) His opinion as to the merits of the claims or defenses of a party, except as required by law or administrative rule.

(5) Any other matter reasonably likely to interfere with a fair trial of the action.

**6.** We note that appellees have not developed at any length claims of conditional privileges which are arguably applicable.

§ 594. Protection of the Publisher's Interest
An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that

(a) there is information that affects a sufficiently important interest of the publisher, and

(b) the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the interest.

§ 595. Protection of Interest of Recipient or a Third Person
(1) An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that

(a) there is information that affects a sufficiently important interest of the recipient or a third person, and

(b) the recipient is one to whom the publisher is under a legal duty to publish the defamatory matter or is a person to whom its publication is otherwise within the generally accepted standards of decent conduct.

(2) In determining whether a publication is within generally accepted standards of decent conduct it is an important factor that

(a) the publication is made in response to a request rather than volunteered by the publisher or

(b) a family or other relationship exists between the parties.

§ 598. Communication to One Who May Act in the Public Interest
An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that

(a) there is information that affects a sufficiently important public interest, and

(b) the public interest requires the communication of the defamatory matter to a public officer or a private citizen who is authorized or privileged to take action if the defamatory matter is true.

*Inc.*, 130 Ariz. 523, 637 P.2d 733 (1981), the Arizona Supreme Court adopted, as the standard for abuse of a conditional privilege, the test of Restatement (Second) of Torts § 600:

§ 600. Knowledge of Falsity or Reckless Disregard as to Truth

Except as stated in § 602, one who upon an occasion giving rise to a conditional privilege publishes false and defamatory matter concerning another abuses the privilege if he

(a) knows the matter to be false, or

(b) acts in reckless disregard as to its truth or falsity.

While negligence is enough to create liability, it is not enough to defeat a conditional privilege. Therefore, appellants' argument, to the extent that it relies on a negligence standard, is without merit. Appellants also contend that evidence in the record satisfies the "actual malice" standard adopted for liability in *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and adopted for abuse of a qualified privilege in § 600. Appellants cite no specific evidence, and we find none, to support that contention. *Cf. Ross v. Gallant, Farrow & Co., P.C.,* 27 Ariz.App. 89, 551 P.2d 79 (1976). There was no abuse of the conditional privilege.

## CONCLUSION

In summary, we hold that

1. The trial court did not abuse its discretion in entering an order in vacating the judgment and setting aside the default against appellee London;

2. The trial court did not err in denying appellants' motion to vacate the order which previously vacated the judgment and set aside the default against appellee London;

3. The trial court did not err in granting summary judgment in favor of appellees London and the Yoders since there was no evidence that they had made or authorized any defamatory statements;

4. The trial court did not err in granting summary judgment in favor of Valder, Craig, Rich and Martin, since their dissemination of the complaint was absolutely privileged; their oral communications, if in fact made, were absolutely privileged; their oral communications, if in fact made, were conditionally privileged, and that privilege was not abused, either by excessive publication or knowledge of falsity or reckless disregard for truth.

The judgments are affirmed.

OGG and FROEB, JJ., concur.