765 P.2d 538

May LONDON, Arthur W. Yoder and Cecil M. Yoder, Howard C. Minnick, and Beatrice Minnick, and Rose Marie Jones, individually and on behalf of all others similarly situated, Plaintiffs–Appellees, Cross Appellants,

v.

GREEN ACRES TRUST, an Arizona corporation; Lisle Hawkins; L. David Hawkins; Green Acres Memorial Gardens, an Arizona corporation; Pueblo Sereno, Inc., an Arizona corporation; Philip D. Hawkins; William H. Hawkins; Ruth Hawkins; Lorlie Hawkins; Nancy P. Hawkins; and Orrie N. Hawkins, Defendants–Appellants, Cross Appellees.

No. 1 CA–CIV 9034.

Court of Appeals of Arizona, Division 1, Department C.

June 30, 1988.

Reconsideration Denied Sept. 16, 1988.

Review Denied Jan. 17, 1989.

**138**

Treon & Warnicke, P.A. by William W. Holder, Terri L. Kessel, and Roush, McCracken & Guerrero by Charles D. Roush, and Douglas G. Martin, Phoenix, for plaintiffs-appellees, cross appellants.

John B. Marron, Phoenix, for defendants-appellants, cross appellees Green Acres Trust, Green Acres Memorial Gardens, Inc., Lisle and Ruth Hawkins, L. David Hawkins and Lorlie Hawkins.

Farley, Robinson & Larsen by James J. Farley, Phoenix, for defendants-appellants, cross appellees Philip Hawkins, William H. Hawkins, Orrie Hawkins and Pueblo Sereno, Inc.

## OPINION

GRANT, Judge.

This is an appeal and cross-appeal from the judgment for the appellees (plaintiffs) in a class action, which began more than ten years ago.

## FACTS

On March 8, 1976, plaintiffs filed a class action, alleging that defendants sold funeral services, merchandise, burial plots, and a series of unregistered 20 year debentures through unregistered securities sales people under the guise and pretext that they were selling prepaid funeral plans. Purchasers were required to complete certain standard forms, which reinforced the impression that they were buying "paid up" funeral plans. These included a vital statistics form and a letter of instruction. Plaintiffs also alleged that defendants concealed pertinent information or made misrepresentations that led members of the class to believe that they were guaranteed a complete funeral at an agreed price.

After an extensive pretrial procedural history the matter came to trial before the court on January 17, 1983. The trial court entered its findings of fact, conclusions of law, and decision on August 10, 1983. These findings were reduced to formal findings of fact, conclusions of law and judgment, signed and entered on December 19, 1984. This judgment, however, required defendants to file an accounting regarding all class members entitled to relief and the amount of money paid by such class members to defendants. Although the judgment provided for costs and attorney's fees in favor of plaintiffs, it did not establish the amount of either. The parties thereafter continued to conduct extensive oral and written arguments regarding these two remaining issues. On February 18, 1986, the court entered its supplemental judgment resolving the accounting, the costs and plaintiffs' attorney's fees, thereby making final all issues and clearing the way for this appeal. Defendants raise nine issues for review, while plaintiffs raise only one on cross-appeal.

## FINDINGS OF TRIAL COURT

The following is a summary of the findings of fact made by the trial court. For more than six years, sales personnel of defendants, Green Acres Trust and Green Acres Memorial Gardens, sold "debentures," which purportedly could be redeemed for funeral merchandise and services from Green Acres Trust and/or cemetery merchandise and services from Green Acres Memorial Gardens upon the purchaser's death. Both Green Acres Memorial Gardens and Green Acres Trust had the same principal shareholder and president, Lisle Hawkins. Although not exempt from registration, the unlicensed sales personnel sold unregistered "Green Acres Trust Debentures" in denominations of $250. In essence, defendants' sales personnel were selling prepaid funeral plans in violation of A.R.S. § 44-1721 et seq. (Current version at A.R.S. § 32-1391 et seq.)

In the sale of these debentures, sales personnel made certain representations, which included that the debentures were being issued by a trust, that the trust would be managed by trustees, and that the funds would be held by a nonprofit corporation. Additionally, sales personnel

failed to disclose material facts pertinent to a decision whether to purchase the debentures. These included the fact that Green Acres Trust was not a nonprofit corporation but rather a subchapter S corporation, owned and operated by and for the benefit of the Hawkins family, and that defendants used debenture funds to make substantial unsecured, undocumented, non-interest bearing loans.

In late 1975, the attorney general's consumer fraud division brought an action against defendants pursuant to the Consumer Fraud Act, contending that defendants had made fraudulent misrepresentations and omissions in connection with their sale of debentures. The complaint charged defendants with deceptively leading purchasers to believe that they were buying pre-arranged funeral plans. Purchasers believed the plan entitled them to funeral or cemetery merchandise and services at a set, prepaid price. Instead, defendants were actually selling debentures, which did not obligate defendants to perform any funeral or burial service and did not fix the price for such services. After agreeing to purchase a "plan," defendants' sales people advised the purchasers that they would receive documents memorializing the agreements. In actuality, the purchasers signed subscription agreements for the purchase of unregistered, unsecured debentures, paying 4 percent return on their investments.

### ISSUES

The following issues are raised on appeal:

I. *Class Action Issues*
  A. Whether class action certification is proper;
  B. Whether the court can create and/or expand the original class;
  C. Whether the legal representation of the class was adequate;
  D. Whether the court provided the necessary notice to class members.

II. *Duplicative Lawsuits*

Have appellants been subjected to duplicative lawsuits seeking the same relief?

III. *Statute of Limitations*

IV. *Burden of Proof*

V. *Election of Remedies*

VI. *Award of Attorneys' Fees*

VII. *Cross–Appeal*

The appellees, in a cross-appeal, question whether the trial court abused its discretion in awarding their counsel only $40,000 in attorneys' fees.

## I. *Class Action Issues*

Defendants raise certain issues specifically related to class action litigation.

### A. Class Action Certification

In deciding whether a class action should be maintained, the trial court must consider whether the action meets the requirements of Rule 23, Arizona Rules of Civil Procedure:

1. The class is so numerous that joinder of all members is impractical (numerosity);
2. There are questions of law and fact common to the class (commonality);
3. The claims or defenses of representative parties are typical of the claims or defenses of the class (typicality); and
4. The representative parties will fairly and adequately protect the interest of the class (adequacy of representation).

Additionally, the court must determine whether the action falls within one of the three categories of class suits provided for by rule 23(b). Here, the court in its order of October 6, 1976, certified plaintiffs' suit as a rule 23(b)(3) class action; therefore, the court determined that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that class action is superior to other available methods for the fair and efficient adjudication of the controversy...." Rule 23(b)(3).

## A. Certification

Defendants maintain on appeal, as they did during the entire course of this litigation, that the original certification and continued certification was improper. They argue that certification was improper because the court failed to hold an evidentiary hearing regarding the superiority of class action treatment or the qualification of the representative plaintiffs or their counsel.

■ While it is true that the record does not reflect a formal evidentiary hearing prior to certification, we cannot agree that this invalidates the certification. Nothing in rule 23 nor in Arizona case law that discusses class actions requires a court to make a specific evidentiary finding. *See Godbey v. Roosevelt School Dist.*, 131 Ariz. 13, 638 P.2d 235 (App.1981); *Lennon v. First Nat'l Bank*, 21 Ariz.App. 306, 518 P.2d 1230 (1974). Most courts generally agree that there is no absolute requirement that a preliminary hearing be held to determine the maintainability of a class action. *Lewis v. Heckler*, 752 F.2d 555 (11th Cir. 1985); 7A Wright, Miller & Kane, *Federal Practice & Procedure* § 1785 at 111 (1986 ed.) and cases cited therein. Pleadings and other pretrial materials may provide the trial court with sufficient information to make its determination.

While there may be no absolute right to have an evidentiary hearing, there are situations when a hearing is appropriate. *Morrison v. Booth*, 730 F.2d 642 (11th Cir. 1984); *International Woodworkers of Am. v. Georgia-Pacific Corp.*, 568 F.2d 64 (8th Cir.1977). One federal court determined that reversal of certification based solely on the contention that the trial court failed to conduct an evidentiary hearing was appropriate only if such a hearing could have affected appellant's rights. *Falcon v. General Telephone Co.*, 626 F.2d 369 (5th Cir. 1980), *vacated on other grounds*, 450 U.S. 1036, 101 S.Ct. 1752, 68 L.Ed.2d 234 (1981). In *Falcon*, the Fifth Circuit noted that such an impairment of rights can occur only when a court makes a decision to *deny* certification without hearing. 626 F.2d at 374. Only then can a party demonstrate that a substantial issue as to certification existed and that he was denied an opportunity to litigate it. *Id.; see also Morrison v. Booth*, 730 F.2d at 643 (district court should not have dismissed class claims without a hearing on class certification); *Madison v. Mississippi Medicaid Comm'n*, 86 F.R.D. 178 (N.D.Miss.1980) (even though the maintainability of the class action may be determined on the pleadings, the court must hold an evidentiary preliminary hearing if it has any genuine doubts regarding the propriety of class action).

The determination of whether a suit should be certified as a class action is left to the discretion of the trial court. *Godbey v. Roosevelt School Dist.*, 131 Ariz. at 16, 638 P.2d at 238. Absent an abuse of discretion this court will not interfere with the trial court's decision. *Id.*

■ Here, when the trial court originally certified plaintiffs' suit as a class action, it not only had the benefit of extensive pleadings but also well developed memoranda, which included discovery materials supporting and opposing certification. On October 6, 1976, the court determined plaintiffs' suit satisfied the requirements of rule 23. In the years following certification, the court had numerous opportunities to review and reconsider its determination. Defendants formally filed motions to decertify on at least four occasions. They also questioned the certification by less formal means, i.e., memoranda regarding responsibility of representative plaintiffs. The court rejected each of defendants' assaults on certification. Nothing in the record suggests that the court's position throughout the years was an abuse of discretion.

## B. Numerosity

■ Defendants also attack certification for lack of numerosity. They contend that the class consists of only eight members and as such is insufficient to justify class action treatment.

There is no bright line rule regarding the number of class members that will satisfy the numerosity prerequisite of rule 23. *Garcia v. Gloor*, 609 F.2d 156, 160 (5th

Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981); *Senter v. General Motors Corp.,* 532 F.2d 511, 523 n. 24 (6th Cir.), *cert. denied* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976). It has been determined, however, that if the named representatives are the only members of the class, rule 23(a)(1) has not been satisfied. *Belles v. Schweiker,* 720 F.2d 509 (8th Cir.1983); *Jamerson v. Board of Trustees,* 662 F.2d 320 (5th Cir. Unit B 1981); *Gore v. Turner,* 563 F.2d 159 (5th Cir.1977).

Here, defendants argue that "[t]he trial judge *discovered* that under the original class definition, there were only 8 members rather than 500." (Emphasis added.) Defendants, in a rare exception, cite to the record in support of this contention. However, the cited transcript reveals that the authority for this factual statement is merely an answer by defendants' counsel to a question from the court. A statement by counsel is not a finding by the court, nor is it evidence before the court. Moreover, it certainly cannot be considered a "discovery." Because defendants fail to direct the court to any evidence in support of its claim, we find this issue without merit.

### C. Adequacy of Legal Representation

■ On appeal, as they did many times below, defendants also challenge the adequacy of representation by counsel for plaintiffs. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." To protect the interests of those whom the named plaintiffs claim to represent, the court inquires not only into the character and quality of the named representatives but it also considers the quality and experience of the attorneys representing the class. *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir.1968), *vacated and remanded on other grounds,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The class attorney must be "qualified, experienced and generally able to conduct the proposed litigation." *Id.*

■ The burden of satisfying the requirement of adequacy of representation falls on the plaintiff. *Lennon v. First Nat'l Bank,* 21 Ariz.App. at 309, 518 P.2d at 1233; *Susman v. Lincoln Am. Corp.,* 561 F.2d 86, 90 (7th Cir.1977). Here, in their motion to certify the class, plaintiffs advised the court which firm the class representatives had employed, who would be lead counsel, and the fact that the resources and expertise of other litigators experienced in class representation would be available to plaintiffs. When it certified this suit as a class action, the trial court found plaintiffs had met their burden.

While it is true that, during the ensuing years, some of the original counsel left the firm, it is also true that the trial court had opportunities to reconsider whether new counsel could adequately represent the class. In fact, in their response to defendants' second motion to decertify the class, plaintiffs offered to file affidavits of their individual experience should the court so request. By this time in the litigation, the trial court had had an ample opportunity to evaluate the legal representation for both sides. Evidently satisfied with the adequacy of representation for the class, the trial court requested no further showing by plaintiffs' counsel. On appeal, defendants fail to raise any new arguments. The trial court consistently rejected defendants' arguments and we find no abuse of its discretion.

### D. Class Action Notice

■ Defendants argue that the trial court failed to provide the necessary notice to class members. Therefore, they contend that the class entitled to participate in a judgment can be no larger than those who received notice of the action during the course of the lawsuit.

Rule 23(c)(2) provides that if a class action is to be maintained under subdivision (b)(3), "the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." In its decision in *Eisen v. Carlisle & Jacquelin* vacating the Second Circuit decision, the Supreme Court settled the question of

whether individual notice was discretionary. The Court stated that "individual notice to identifiable class members is not a discretionary consideration to be waived in a particular case. It is, rather, an unambiguous requirement of Rule 23." *Id.* 417 U.S. at 176, 94 S.Ct. at 2152, 40 L.Ed.2d at 747–48. In *Eisen*, the Court found that the prospective class included as many as six million individuals. It was determined that, with reasonable effort, at least two million people could be identified by name. *Id.* at 166–67, 94 S.Ct. at 2147, 40 L.Ed.2d at 742. Notwithstanding the $250,000 expense of notice to all individual members, the Court found notice by publication did not satisfy the "best notice" requirement of rule 23.

The language of both rule 23 and *Eisen* refer to *identifiable* class members—members who could be identified through "reasonable efforts." Here, the trial court specifically found that defendants intentionally and wrongfully withheld the names of all the class members, thereby making it impossible for the class representatives or the court to give them individual notice.

On appeal, defendants suggest that no grounds exist for the trial court's finding. We do not agree. A review of the record indicates that throughout the course of this litigation, defendants have vigorously objected to supplying plaintiffs the names of possible class members. This quarrelsome attitude began with the first set of non-uniform interrogatories and continued through the preparation of various notices to class members.

Defendants contend that the class always consisted only of those individuals who purchased debentures. Defendants also suggest that they were surprised when the judgment included relief for persons who purchased or agreed to purchase trust merchandise. We do not agree. To give the class the definition urged by defendants requires a narrow, hypertechnical reading of court orders and requests throughout the trial. In its order of February 17, 1977, the trial court approved notice of the class action and advised prospective class members that: "[i]f you purchased,

or agreed to purchase any debenture or a funeral plan, including merchandise or services ..." they could join in the class action. This court-approved notice did not limit class membership solely to those individuals who bought debentures. Rather, it ordered notice to those who bought "debentures *or* funeral plans." Moreover, the plaintiffs' second amended complaint explicitly does not limit the membership to those parties who bought both debentures *and* merchandise. Paragraph 4 of the complaint states:

> The members of the class which plaintiffs seek to represent by their complaint consist of all persons who purchased debentures, a PFPA, personal property, services *or* a burial plot with perpetual care *or* entered into written agreements with defendants for such purchases from the defendants between March 8, 1970 and March 8, 1976.

(Emphasis added.)

The trial court made specific requests of defendants that suggest they knew or should have known that the definition of the class was not so restrictive as they claim on appeal. In another order dated April 21, 1977, when trying to resolve the question of potential class members, the trial judge ordered defendants to "produce ... and provide to plaintiffs the three by five cards and running lists of class members who have discussed the case with [defendants]." In another order dated May 26, 1977, the court granted defendants' motion to "limit discovery as to all matters which do not fall within the definition of the class as defined by the court."

The court's finding regarding defendants' refusal to provide the names of potential class members was not pulled from thin air. When the record is taken as a whole, it is apparent that defendants continued to support a narrow, restrictive definition of the class, which the court had long since rejected.

Although it is true that rule 23 requires individual notice to class members, it also requires that the notice be sent only to identifiable members of the class. Here, defendants' uncooperative behavior result-

ed in some class members remaining unidentified. Defendants now seek to use this behavior both as a shield and a sword. It is axiomatic that no one may take advantage of his or her own wrong. We therefore find that the trial court did not err when it added to the class individuals who did not receive notice.

## II. *The Attorney General's Action: Duplicate Suits*

■ Defendants argue that they have been subjected to duplicate suits and, therefore, this complaint should have been dismissed by the trial court because the attorney general had previously brought a "class action." We disagree.

Once again, defendants misread the history of this case. The attorney general did not bring a class action, nor did he seek the same relief as plaintiffs. While it is true both actions were based on the same set of circumstances, i.e., defrauding the public by the sale of prepaid funeral plans, the attorney general grounded his claim solely on violations of the Arizona Consumer Fraud Act, A.R.S. § 44–1521. Plaintiffs grounded their claims on violations of the Arizona Prepaid Funeral Plan statutes, A.R.S. § 44–1721 *et seq.*, (current version at A.R.S. § 32–1391 *et seq.*), the Arizona Endowment Care Fund statutes, A.R.S. § 32–2194 *et seq.*, the Arizona Securities statutes, A.R.S. § 44–1841 *et seq.*, and the Arizona Consumer Fraud statutes, A.R.S. § 44–1521 *et seq.* Furthermore, as noted above, the relief sought by the attorney general and plaintiffs was dissimilar: the attorney general sought an injunction, civil penalties, and other relief.

That the attorney general's action and the case at bar are not duplicative is shown by the consent judgment in the former case, wherein defendants specifically acknowledged that *settling that case* was "not intended to and does not preclude any other persons from instituting or maintaining other civil proceedings ... as may be appropriate...." We also note that the consent judgment specifically refers to the existence of this litigation.

Defendants cite several federal decisions holding that preceding litigation may preclude its duplication. *Mitchell v. Texas Gulf Sulphur Co.*, 446 F.2d 90 (10th Cir. 1971), *cert. denied*, 404 U.S. 1004, 92 S.Ct. 564, 30 L.Ed.2d 558 (1971); *Barkal v. Charles Pfizer & Co.*, 51 F.R.D. 504 (S.D. N.Y.1970). These cases are inapplicable on their facts. In *Barkal*, there were 140 antitrust actions pending separately in 48 states, many of which were brought by state attorneys general. In *Mitchell*, there were 94 separate actions brought against Texas Gulf Sulphur, including two class actions that were proceeding with full discovery in the Southern District of New York. 446 F.2d at 107. Thus, in both *Barkal* and *Mitchell*, class actions with developed discovery were already pending, along with a multitude of other individual actions. Such an extreme factual situation did not exist here. Two actions were filed. Although the factual set of circumstances that gave rise to both actions was similar, the relief sought and the grounds supporting the action were not. We find that plaintiffs' claims are not duplicative of any other lawsuit nor are they in any way barred by the attorney general's action.

## III. *Statute of Limitations*

■ Defendants argue that many class members' claims are barred by the statute of limitations. Noting that the statute of limitations is one year, defendants attempt to narrow their liability to purchasers who bought debentures or trust merchandise one year before the filing of the complaint. The trial court found the applicable statute of limitations was "one year after *discovery.*" (Emphasis added.)

Sound policy reasons support statutes of limitation; they are "a necessary protection against the assertion of unmeritorious claims long after they are capable of being defended." *Jackson v. American Credit Bureau, Inc.*, 23 Ariz.App. 199, 203, 531 P.2d 932, 936 (1975). The statute of limitations may be tolled when claims are not timely brought due to some concealment or wrongdoing on the part of defendants. *Washington Nat'l Corp. v. Thomas*, 117 Ariz. 95, 100, 570 P.2d 1268, 1273 (App.

1977); *Geiler v. Arizona Bank*, 24 Ariz. App. 266, 273, 537 P.2d 994, 1001 (1975). Since the defendants here took affirmative action that would cause the barring of the plaintiffs' claims, the court should not allow defendants to hide behind the statute of limitations.

In this case, plaintiffs did not "[sleep] on their rights" as defendants suggest. Rather, defendants, by their conduct, concealed the very facts on which plaintiffs' case rests. The plaintiffs were unaware that defendants were not selling prepaid funeral plans. The sales techniques, employed by the unregistered sales personnel, carefully and purposefully masked the true nature of the transaction.

### IV. *Burden of Proof*

█ Defendants argue that plaintiffs did not sustain their burden of proof. Because it is the function of the trial court to weigh the evidence, we will review the evidence in a manner most favorable to sustaining judgment. *Yano v. Yano*, 144 Ariz. 382, 384, 697 P.2d 1132, 1134 (App.1985). Therefore, if there is evidence that supports the judgment, we will not disturb that judgment. *Magna Inv. & Devel. Corp. v. Brooks Fashion Stores, Inc.*, 137 Ariz. 247, 249, 669 P.2d 1024, 1026 (App. 1983). Implied in every judgment, in addition to express findings made by the court, is any additional finding necessary to sustain the judgment if reasonably supported by the evidence and not in conflict with the express findings. *Coronado Co. v. Jacome's Dept. Store, Inc.*, 129 Ariz. 137, 139, 629 P.2d 553, 555 (App.1981). Also, the conclusions of law necessary to sustain the judgment are implied if supported by the evidence and the findings. *Id.*

Defendants contend "[t]here was no evidence offered to establish [certain] allegations in the Complaint...." We disagree. After reviewing the record, we find ample support for allegations in the complaint.

Painting with a broad brush, defendants argue that the forms of various orders, findings, conclusions, accountings, and judgments, individually or in their totality, were improper. Defendants further claim

that it is necessary to review ten orders to ascertain what relief was actually granted by the trial court. Again, we disagree. We need only look at the findings of fact, conclusions of law and judgment dated December 19, 1984, and the supplemental judgment dated February 18, 1986, to determine that the class members are thereby permitted to stand upon their contracts and receive nothing more or to rescind their contracts and receive their money back. On appeal, there is a presumption that a trial court's judgment is correct; therefore, the burden is upon the defendants to point out where the trial court erred. *Chase v. State Farm Mut. Auto. Ins. Co.*, 131 Ariz. 461, 463 n. 2, 641 P.2d 1305, 1307 n. 2 (App.1982). Although defendants challenge the judgment, they fail to specify where the evidence does not support the judgment, and they fail to cite to the record in support of their position. *See Arizona Laborers v. Hatco, Inc.*, 142 Ariz. 364, 369–70, 690 P.2d 83, 88–89 (App.1984).

### IV. *Election of Remedies*

Defendants contend that they successfully argued to the court that in this situation an election of remedies would be required. They also maintain that the trial court agreed. Defendants cite to a May 23, 1980, transcript. The record on appeal contains no transcript from that date. It is the burden of defendants to prepare the record. *State v. Spinks*, 156 Ariz. 355, 752 P.2d 8 (App.1987). However, even without the benefit of the cited transcript, defendants' argument appears to be without merit. We do not believe the trial court granted inconsistent relief to class members. Rather, the class members will be permitted to either stand upon their contracts and receive nothing more, or to rescind their contract and receive their money back with statutory interest.

### VI. *Attorney's Fees*

On August 15, 1985, the trial court awarded counsel for plaintiffs $40,000 in attorney's fees. In reaching its decision, the court stated that it "has taken into consideration all the factors presented by

the parties giving greatest weight to the nature and extent of the actual benefit to be conferred upon members of the class." The court specified that the "sum [was] to be assessed against Defendants and not to be paid out of any common fund or recovery generated by the relief granted herein." Before entering this order the trial court was fully briefed on the issue and had the benefit of oral argument before making its decision.[1]

Defendants argue that the award of attorney's fees was improper because no agreement between the parties specifically provided for them and the trial court lacked any statutory authority to make such an award. We disagree.

The general rule regarding attorney's fees, sometimes referred to as the "American Rule," is that, absent a statute or contract, the prevailing litigant is ordinarily not entitled to collect attorney's fees from the losers. *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Marcus v. Fox*, 150 Ariz. 333, 723 P.2d 682 (1986); *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 577, 521 P.2d 1119, 1123 (1974).

The trial court below did not specify its authority to grant an award of attorney's fees. It did however specifically exclude A.R.S. § 12–341.01 as authority for its award. Section 12–341.01, the statute which authorizes attorney's fees to the prevailing party in an action arising out of contract, does not apply because this case was filed on March 8, 1976, before the statute became effective on September 1, 1976. *Bouldin v. Turek*, 125 Ariz. 77, 607 P.2d 954 (1979); *Mission Bank v. Kutko*, 124 Ariz. 199, 603 P.2d 91 (1979). On appeal plaintiffs claim the award of attorney's fees under A.R.S. § 44–2001, which provides:

A sale or contract for sale of any securities to any purchaser in violation of any provision of §§ 44–1841, 44–1842 or article 13 of this chapter, is voidable at the election of the purchaser, who may bring an action in a court of competent jurisdiction to recover the consideration paid for the securities, with interest thereon, taxable court costs and reasonable attorneys' fees, less the amount of any income received by dividend or otherwise from ownership of the securities, upon tender of the securities purchased or the contract made, or for damages if he no longer owns the securities.

Thus, there is a basis for the award for those members of the class that elect to tender the securities or contracts. The defendants argue that those members cannot be determined until the time for tender has passed, that the court has not set a deadline for tender, and that no member of the class has voluntarily tendered any securities. Consequently, defendants claim that no lump sum award of attorney's fees can be justified. The plaintiffs do not respond to this argument about the failure to tender.

The plaintiffs claim that an award of attorney's fees is permissible in a class action securities fraud cause and that such an award is discretionary with the trial court. In the reply brief the defendants note again that for an attorney's fee award under A.R.S. § 44–2001 *et seq.*, there must be a prompt tender of the securities.

In addition to arguments previously mentioned, the plaintiffs point out that the general rule or American Rule regarding the unavailability of attorney's fees to the prevailing party absent statute or contract is not an absolute bar to shifting of attorney's fees. In their trial memorandum filed January 17, 1983, and again in their reply in support of their application for fees the plaintiffs asserted the claim that the court had equitable power to award fees based on the manner in which the defendants conducted the case. The plaintiffs cited *U.S. Fidelity & Guaranty Co. v.*

---

**1.** We note that although the record indicates that court reporters were present during all oral arguments regarding attorney's fees, the record on appeal, submitted by defendants, does not include transcripts from these dates. Accordingly, we must presume that the record supports the decision of the trial court. *State v. Spinks*, 156 Ariz. at 360, 752 P.2d at 13; *State v. Kerr*, 142 Ariz. 426, 690 P.2d 145 (App.1984).

*Frohmiller,* 71 Ariz. 377, 227 P.2d 1007 (1951) in support of this proposition. There is indeed an equitable exception to the American Rule which permits recovery of fees and expenses in this case: the bad faith exception. *See generally* M. Derfner and A. Wolfe, Court Awarded Attorney's Fees, § 4.01 (1988).

There are few Arizona cases which discuss this common law bad faith exception, perhaps because A.R.S. § 12–341.01(C), which was enacted in 1976, is now employed to award attorney's fees where the action or defense is groundless or not made in good faith. At least one Arizona case, however, suggests that our supreme court recognizes this bad faith exception. In *Taylor v. Southern Pac. Transp. Co.,* 130 Ariz. 516, 637 P.2d 726 (1981), the court recognized that when one, acting vexatiously, wantonly, or for oppressive reasons, places another in a position, vis-a-vis a third person, so that the second person must incur attorney's fees to protect his interests, such fees are the legal consequence of the first person's wrongful conduct and are recoverable as damages. The court, in *Taylor,* however, did not limit the rule to cases where the wrongdoer has embroiled a second person in litigation with a third. It went on to say, in discussing an award of fees in a lawsuit when one party claimed the other had engaged in improper conduct, that

> [w]here there is a complete and repeated disregard of a court order and where there is no reasonable justification for its breach, a court might, in its discretion, award attorneys fees as a sanction. See 6 J. Moore, Federal Practice § 54.77(2) (2d ed. 1976). The integrity of the courtroom and the judicial process requires that the trial court have this remedy in exceptional circumstances.

130 Ariz. at 523, 637 P.2d at 733. Other authorities recognize that the common law bad faith exception may exist as an alternate remedy to recovery under a statute which allows an award of attorney's fees. *See Derfer* § 4.04.

▪ Bad faith may be found in the conduct of litigation as well as the conduct that gives rise to the litigation. *Hall v. Cole,* 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702, 713 (1973). An award in these situations has been characterized as "redressing the insult to injury." *Straub v. Vaisman & Co.,* 540 F.2d 591, 600 (3d Cir.1976). Just as other court-awarded sanctions punish and deter conduct that unnecessarily prolongs or complicates litigation, so does an award of attorney's fees deter bad faith. Derfner, § 4.01.

Courts award bad faith fees for both procedural and substantive abuse. Procedural abuse may include situations where counsel has persistently failed to cooperate with the opposing litigant's counsel or the court. *Caspe v. Triple AAACon Auto Transp., Inc.,* 658 F.2d 613, 618 n. 7 (8th Cir.1981); *Thonen v. Jenkins,* 374 F.Supp. 134, 139 (E.D.N.C.1974) *affirmed in part, vacated and remanded on other grounds,* 517 F.2d 3 (4th Cir.1975); *Red School House, Inc. v. Office of Economic Opportunity,* 386 F.Supp. 1177, 1193–94 (D.Minn. 1973). Substantive abuse includes situations where counsel imposes "unnecessary, groundless, vexatious, and oppressive petitions [and] motions," *In Re Swartz,* 130 F.2d 229, 231 (7th Cir.1942), *accord Local 149, United Auto Workers v. American Brake Shoe Co.,* 298 F.2d 212, 214 (4th Cir.1962), or the refusal to concede matters about which there can be no legitimate dispute. *Wright v. Jackson,* 522 F.2d 955, 958 (4th Cir.1975).

▪ Because the record on appeal is incomplete we do not know what oral arguments counsel made that might have persuaded the court. Nor do we know what questions the court might have asked that would demonstrate its concerns. Certainly, the massive record reveals and the trial court knew this had been difficult and protracted litigation.[2] It commenced in March

---

2. The parties to this litigation have now generated four reported appellate decisions, including this one. First, the class-action defendants challenged the attorney general's ability to sue them

under the state's Consumer Fraud Act. *People ex rel. Babbitt v. Green Acres Trust,* 127 Ariz. 160, 618 P.2d 1086 (App.1980) (attorney general could not allege Securities Act violations as a

1976, and has been before a number of judges. The parties have disputed almost every discovery request. Defendants have initiated several special actions from adverse rulings of the trial court. Defendants have sought to use each and every procedural device available to them to gain dismissal or limitation of the issues that were before the court. These attempts included, among others, requests for dismissal based upon security for costs, a request that the entire matter be placed before the probate court, a request that counsel for the class be eliminated because of conflict of interest, and a request for dismissal based on statute of limitations and pretrial election of remedies.

Even though plaintiffs had the benefit of a prior consent judgment, defendants strenuously litigated a variety of substantive issues. In fact, everything from class treatment to liability, damages, and the form of judgment has been hotly contested. However, the result, after ten arduous years, was findings of fact that paralleled the consent judgment entered into by defendants and the attorney general. Certainly, a trial court so familiar with this case and defendants' history could have grounded its award of attorney's fees on bad faith.

Awarding attorney's fees as punishment for bad faith has been codified in A.R.S. § 12–341.01(C), which would apply to this case had it been filed after the statute's effective date. However, the theory underlying the statute has always been available to courts. *Taylor v. Southern Pac. Transp. Co.; Copeland v. Martinez*, 603 F.2d 981, 985 (D.C.Cir.1979), *cert. denied*, 444 U.S. 1044, 100 S.Ct. 730, 62 L.Ed.2d 729 (1980).

Although defendants through the years have chastised plaintiffs for allowing this protracted litigation to burden the courts and waste judicial resources, our review of this record reveals that in light of the unconscionable campaign mounted by defendants and its results, the defendants and their attorney are the ones who should be chastised. The trial court's award of attorney's fees is within its discretion. *Wheel Estate Corp. v. Webb*, 139 Ariz. 506, 508, 679 P.2d 529, 531 (App.1983). In the absence of an abuse of discretion we will not tamper with its decision.

■ We now address a more difficult question. On cross-appeal, plaintiffs argue that the trial court abused its discretion when it failed to enhance the award of attorney's fees by using the lodestar method of calculating attorney's fees. The lodestar method, a two-step process, is a guide to the judge awarding fees that exceed those indicated by the amount of time spent on the case. First, the court determines the number of hours expended multiplied by an appropriate hourly rate. This is the lodestar figure. Comment, *Statutory Attorney's Fees in Arizona: An Analysis of A.R.S. § 12–341.01*, 24 Ariz.L. Rev. 658, 681–82 (1982). Once this figure is calculated, the trial court adjusts it, based on factors such as complexity of litigation, quality of representation and risk of recovery. *Illinois v. Sangamo Const. Co.*, 657 F.2d 855, 862 (7th Cir.1981). Whether an award constitutes reasonable attorney's fees is left in the sound discretion of the trial judge, as the decision must necessarily rest on the facts and consequences of each case. *Lange v. Penn Mut. Life Ins. Co.*, 843 F.2d 1175 (9th Cir.1988); *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 694 P.2d 1181 (1985).

Plaintiffs offered the trial court a variety of considerations, which they believe justi-

---

basis for action under the Consumer Fraud Act but could allege a cause of action under the Consumer Fraud Act based on the allegation that defendant sold "debentures"). Next, the · Green Acres defendants sued the class-action plaintiffs and their attorneys for defamation based on a newspaper article that was published the day the suit was filed. The Court of Appeals found that the clients were not liable for the defamation and that the attorneys had an abso-

lute privilege because their statements related to judicial proceedings. *Green Acres Trust v. London*, 142 Ariz. 12, 688 P.2d 658 (App.1983). The Arizona Supreme Court then vacated that part of the Court of Appeals' decision granting an absolute or conditional privilege to the lawyers' communications to the media, in part because they were extrajudicial statements unrelated to the judicial proceedings. *Green Acres Trust v. London*, 141 Ariz. 609, 688 P.2d 617 (1984).

fied an award of attorney's fees. These included: the ability, training, education and professional standing of plaintiffs' attorneys; the difficulty, intricacy, importance and responsibility of the work performed in the class action; the time, attention and skill given to the class action work; the success and benefits derived by the attorneys representing the class; the reasonable hourly rates that prevail in the community for similar work; the undesirability of the work undertaken by plaintiffs' attorneys; and the contingent nature of the work undertaken by plaintiffs' attorneys.

On appeal, plaintiffs argue that they should be rewarded for taking the risk that they would recover no fees. But the risk borne by the attorneys is not the deciding consideration for enhancement of fees. The United States Supreme Court has made it very clear that the use of the lodestar method to enhance attorney's fees is the exception. In *Blum v. Stenson*, the Court stated that "[a] trial court may justify an upward adjustment only in the rare cases where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that their success was exceptional." 465 U.S. 886, 899, 104 S.Ct. 1541, 1549, 79 L.Ed.2d 891, 902 (1984). *See also Planned Parenthood v. Arizona,* 789 F.2d 1348 (9th Cir.1986).

Here, the trial court specifically stated that it considered all the factors, but gave the "greatest weight to the nature and extent of the actual benefit conferred upon members of the class." Arguably, these words imply a finding by the trial court that the success was not "exceptional" as required by *Blum.* Since any award of attorney's fees as well as an enhancement of the award is exceptional, absent an abuse of discretion we will not reverse the trial court's ruling. We find no abuse of discretion here.

The appellees request attorney's fees on appeal pursuant to ARCAP Rule 25, alleging that this appeal is frivolous and taken solely for purpose of delay. We agree and grant appellees/plaintiffs attorney's fees

and costs on appeal in an amount to be determined upon the filing of a statement pursuant to ARCAP Rule 21.

The judgment of the trial court is affirmed.

SHELLEY, P.J., and KLEINSCHMIDT, J., concur.