IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

SEP 17 2009

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| JOHN D. KAUFMANN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 2 CA-SA 2009-0031 |
| | ) | DEPARTMENT B |
| HON. MICHAEL J. CRUIKSHANK, | ) | |
| Judge of the Superior Court of the State | ) | O P I N I O N |
| of Arizona, in and for the County of Pima, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE STATE OF ARIZONA, | ) | |
| | ) | |
| Real Party in Interest. | ) | |
| | ) | |

SPECIAL ACTION PROCEEDING

Pima County Cause Nos. CR-20082074 and CR-20040331

JURISDICTION ACCEPTED; RELIEF GRANTED

John D. Kaufmann                                                                                   Tucson
                                                                                          In Propria Persona

Barbara LaWall, Pima County Attorney
  By Jacob R. Lines and David L. Berkman                                                      Tucson
                                                                       Attorneys for Real Party in Interest

E C K E R S T R O M, Presiding Judge.

**¶1**        The issue in this special action is whether the respondent judge properly relied upon his inherent authority to sanction bad-faith litigation conduct in ordering defense counsel to pay the State of Arizona's attorney fees in the underlying criminal proceeding. We accept jurisdiction of this special action to address this narrow question because it raises a pure issue of law that has implications for criminal proceedings throughout the state and because the issue appears to be a matter of first impression.[1]  *See State ex rel. Pennartz v. Olcavage*, 200 Ariz. 582, ¶ 8, 30 P.3d 649, 652 (App. 2001) (acceptance of special action jurisdiction more likely "in cases involving a matter of first impression, statewide significance, or pure questions of law"); *see also State v. Shipman*, 208 Ariz. 474, ¶ 3, 94 P.3d 1169, 1170 (App. 2004) (award of attorney fees pursuant to undisputed authority is discretionary, but "whether a particular basis for awarding fees applies at all is an issue of law that we review de novo").  For the reasons that follow, we conclude the respondent judge abused his discretion and vacate the award.

## Background

**¶2**        Kaufmann challenges the respondent judge's order sanctioning him for pursuing an order to show cause (OSC) why the Pima County Attorney's office and a deputy Pima County Attorney should not be held in contempt.  In the OSC petition filed on behalf

---

[1]Petitioner Kaufman's client in the underlying matter previously had filed a special action petition relating to the underlying litigation conduct at issue here.  Kaufmann then moved to amend that petition to raise the issue we now address in this opinion.  We granted that motion to amend but, because the petitioners in the two cases are different persons, we now treat the two claims as separate special actions.  We have, by separate order, declined jurisdiction as to the special action petition Kaufmann has brought on his client's behalf.

of his client H., Kaufmann stated that, after H.'s arrest for possession, transportation, and possession for sale of marijuana in 2008, and the state's filing of a motion to revoke her probation for a 2004 conviction, she "began to explore the possibilities of assisting her position" in these cases by providing information to the state about cases pending against other defendants. Kaufmann alleged the Pima County Attorney's office and the deputy Pima County Attorney had failed to honor an understanding between H. and a Pima County Sheriff's detective that H. would receive a benefit if the state used a written statement she had given, inculpating another criminal defendant in a homicide case.

¶3 Kaufmann further alleged the state had "intentionally placed [H.'s] life in jeopardy" by disclosing her statement to defense counsel in the homicide case without notifying her in advance of disclosure. Kaufmann asked the respondent judge to issue contempt citations against the individual prosecutor in question, to award H. monetary sanctions in the amount of $1,000 per day since the state's disclosure and her attorney fees, and to "modif[y] . . . the plea agreement" she had previously entered.

¶4 In its response, the state argued the OSC petition was "baseless as a matter of law" and vexatious and asked the court to sanction Kaufmann by ordering him to pay attorney fees the state had incurred in responding to the petition. After a hearing, the respondent judge agreed with the state that the OSC petition was not an appropriate means of seeking the relief H. sought and denied the petition. Kaufmann filed a special action on H.'s behalf challenging that ruling. The state subsequently filed a "motion for costs" in the trial court, which included a request for attorney fees, citing the court's inherent authority to

3

sanction bad faith conduct. The respondent judge granted the state's motion in an amount not to exceed $500 after finding the OSC petition was "frivolous and unsubstantiated with no legal cause" and "unrelated to the cause number under which [it] was filed" and that it sought "an inappropriate remedy for [H.'s] alleged complaint." At the respondent's direction, the state submitted a statement of costs in the amount of $499. All of the charges listed were for attorney fees.

¶5 Kaufmann filed a motion for reconsideration of the respondent judge's order, arguing the court's inherent authority to award attorney fees in criminal proceedings is limited by statute and the rules of criminal procedure. He argued the respondent judge was required to proceed in accordance with Rule 33, Ariz. R. Crim. P., which governs criminal contempt proceedings, before it could impose any such sanctions. He further argued the respondent judge had made no findings that counsel had engaged in conduct that could be characterized as vexatious, oppressive, or in bad faith, conduct that the United States Supreme Court suggested, in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975), could support an award of attorney fees under a court's inherent authority. The respondent judge denied the motion for reconsideration, finding it was "clear that [Kaufmann] has significant personal animus for [the prosecutor], and that appears to be the motive for these pleadings, which are frivolous, insubstantial, and vexatious."

¶6 Kaufmann then amended the special action he had filed in this court on H.'s behalf challenging the respondent judge's authority to shift the state's attorney fees to him. He suggests that, because the OSC petition was filed in a criminal proceeding, the respondent

4

could only have imposed such a sanction through contempt proceedings outlined in Rule 33. He argues that a court's imposition of attorney fees as a sanction without compliance with that rule's procedural safeguards would have a "chilling effect" on criminal defense counsel, implicating a defendant's constitutional right to effective representation. In its response, the state argues the respondent acted within his discretion under the court's inherent authority.

**Discussion**

¶7 "In Arizona we follow the general American rule that attorney[] fees are not recoverable unless they are expressly provided for either by statute or contract." *Cortaro Water Users' Ass'n v. Steiner*, 148 Ariz. 314, 316, 714 P.2d 807, 809 (1986); *see also State v. Boykin*, 112 Ariz. 109, 113, 538 P.2d 383, 387 (1975) (same). In some instances, an award of attorney fees is also expressly authorized by court rule. *See* Ariz. R. Civ. P. 11, 37(a).

¶8 Section 12-349(A)(1)–(4), A.R.S., for example, provides that a court "shall assess" an award of reasonable attorney fees against a party who "[b]rings or defends a claim without substantial justification[;] [b]rings or defends a claim solely or primarily for delay or harassment[;] [u]nreasonably expands or delays the proceeding[; or e]ngages in abuse of discovery." But, by its express terms, § 12-349 does not apply "to any proceedings brought by this state pursuant to title 13." § 12-349(D).

¶9 Section 12-341.01(C), A.R.S., similarly provides, "The court shall award reasonable attorney fees in any contested action upon clear and convincing evidence that the claim or defense constitutes harassment, is groundless and is not made in good faith." *See State v. Richey*, 160 Ariz. 564, 565, 774 P.2d 1354, 1355 (1989) ("[C]ontexts in which

§ 12-341.01(C) applies may often overlap those in which § 12-349 applies."). It is unclear whether our legislature intended this provision to apply to criminal prosecutions under Title 13.[2] Unlike § 12-349, § 12-341.01(C) does not expressly exclude criminal proceedings from its reach. *Cf. Richey*, 160 Ariz. at 564-65, 774 P.2d at 1354-55 (attorney fee award under § 12-341.01(C) available in case involving adjudication of civil traffic violation). But, one of its triggers, the presentation of a groundless defense, would not logically apply in the criminal context wherein defense counsel are required to vigorously defend their clients regardless of the strength of the state's case. *Cf. State v. Lee*, 142 Ariz. 210, 215, 689 P.2d 153, 158 (1984) (ultimate decisions about pleading guilty, waiving jury trial, and testifying are left to defendant). For that reason, we question whether § 12-341.01(C) was intended to apply in criminal cases. In any event, the state did not seek attorney fees pursuant to § 12-341.01(C), nothing in the record suggests the respondent judge imposed them pursuant to that provision, and the respondent made no findings by the clear and convincing evidentiary standard required by that provision.

**¶10**　　　　Finally, unlike our procedural rules for civil cases, there is no rule of criminal procedure that permits the court to award attorney fees against a party who files a frivolous pleading. *See* Ariz. R. Civ. P. 11(a) (in civil proceeding, party or counsel who files pleading

---

[2]When engaging in statutory interpretation, we first look to the plain language of the statute to determine its meaning. *Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996). Only when the language is unclear do we consider other factors like "the statute's context, subject matter, historical background, effect and consequences, and spirit and purpose." *Id.* We are cognizant of those standards in considering the relevant statutory provisions here.

or motion not "well grounded in fact," not "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law," or "interposed for any improper purpose" may be sanctioned by order to pay "reasonable expenses incurred" of other party including attorney fees); *State v. Shipman*, 208 Ariz. 474, ¶ 5, 94 P.3d 1169, 1171 (App. 2004) ("The criminal rules contain no counterpart to Rule 11 of the civil rules.").

¶11            The state argues, however, that the respondent judge had the inherent authority to sanction counsel.  It asserts, "The inherent authority of a court to sanction a lawyer for bad faith conduct—independent of rules allowing for those sanctions—is well established," relying on *Hmielewski v. Maricopa County*, 192 Ariz. 1, ¶ 14, 960 P.2d 47, 50 (App. 1997); *Precision Components, Inc. v. Harrison, Harper, Christian & Dichter, P.C.*, 179 Ariz. 552, 555, 880 P.2d 1098, 1101 (App. 1993); *Sallomi v. Phoenix Newspapers, Inc.*, 160 Ariz. 144, 149, 771 P.2d 469, 474 (App. 1989); and *Alyeska Pipeline Service Co.*, 421 U.S. at 258-59. But none of those cases involved the imposition of attorney fees as a sanction, much less imposing such fees on a defendant or his or her counsel in a criminal case—an action with arguably different public policy implications than the imposition of similar fees in a civil case.

¶12            Although a court may have the inherent authority to sanction a lawyer for litigation conduct, our supreme court has, in dicta, suggested only limited circumstances in which those sanctions may include attorney fee awards that are otherwise unsupported by

7

statute or rule.[3]  *See Taylor v. S. Pac. Transp. Co.*, 130 Ariz. 516, 523, 637 P.2d 726, 733 (1981) (attorney fees might be awarded after party's "complete and repeated disregard of a court order" without justification or, as damages, where wrongful act required other party to defend against others).  *But see London v. Green Acres Trust*, 159 Ariz. 136, 147, 765 P.2d 538, 549 (App. 1988) ("[a]warding attorney's fees as punishment for bad faith has been codified in A.R.S. § 12-341.01(C)," but "theory underlying the statute has always been available to the courts").[4]

¶13　　　　In *Alyeska Pipeline*, the Supreme Court "affirmed the continuing vitality of the 'American Rule' that requires each party to bear the cost of its own attorneys' fees absent express statutory authority," but noted the following exceptions in federal courts:  "(1) the common fund doctrine applies; (2) a party willfully disobeys a court order; or (3) a party acts in bad faith."  *State v. Meza*, 203 Ariz. 50, ¶ 51, 50 P.3d 407, 418 (App. 2002) (Hall, J., concurring in part and dissenting in part), *quoting Alyeska Pipeline*, 421 U.S. at 258-59.  And in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991), the Court held that although a federal court "ordinarily should rely on the Rules" if they apply to bad faith conduct at issue, "if in

---

[3]In *Hmielewski*, for example, the trial court imposed fines, not attorney fees.  192 Ariz. 1, ¶ 12, 960 P.2d at 49.  In *Precision Components*, the court ordered counsel for both plaintiff and defendant to forbear billing their clients for fees associated with a motion for summary judgment.  179 Ariz. at 553, 880 P.2d at 1099.

[4]To the extent *Green Acres Trust*, 159 Ariz. at 147, 765 P.2d at 549, is correct that § 12-341.01 codified a common law judicial prerogative, the shifting of attorney fees on that basis would require express findings by the respondent judge that, by clear and convincing evidence, H.'s claim constituted harassment, was groundless, and was not made in good faith.  *See Richey*, 160 Ariz. at 565-66, 774 P.2d at 1355-56.

the informed discretion of the court, neither the [federal] statute nor the Rules are up to the task, the court may safely rely on its inherent power." According to the Court, the inherent power to sanction is "'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Id.* at 43, *quoting Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962).

¶14 Many states have followed these federal decisions in permitting their lower courts to order payment of an opposing party's attorney fees as a sanction for bad faith litigation conduct. *See, e.g.*, *Moakley v. Smallwood*, 826 So. 2d 221, 225-26 (Fla. 2002) (collecting cases). Other states have not. *See, e.g.*, *Bauguess v. Paine*, 586 P.2d 942, 948-49 (Cal. 1978) ("It would be both unnecessary and unwise to permit trial courts to use fee awards as sanctions apart from those situations authorized by statute. If an attorney's conduct is disruptive of court processes or disrespectful of the court itself, there is ample power to punish the misconduct as contempt."); *Hearity v. Dist. Court*, 440 N.W.2d 860, 863 (Iowa 1989) ("Because the right to recover attorney fees did not exist at common law, the power to assign the prevailing party's fees against the nonprevailing party cannot be considered 'inherent' . . . ."); *Nusbaum v. Berlin*, 641 S.E.2d 494, 502 (Va. 2007) ("In the absence of authority granted by a statute . . . or a rule of court . . . a trial court's inherent power to supervise the conduct of attorneys practicing before it and to discipline an attorney who engages in misconduct does not include the power to impose as a sanction an award of attorneys' fees and costs to the opposing parties.").

¶15 As noted, our supreme court, like the Court in *Alyeska Pipeline*, 421 U.S. at 258-59, has identified equitable exceptions to the rule that each party bear its own fees. *See Boykin*, 112 Ariz. at 113-14, 538 P.2d at 387-88 (listing exceptions); *see also Arnold v. Ariz. Dep't of Health Servs.*, 160 Ariz. 593, 609, 775 P.2d 521, 537 (1989) (adopting private attorney general doctrine allowing fee award for "vindicating an important public policy"). But none of the exceptions identified suggests that attorney fees can be imposed in criminal cases under the circumstances here.

¶16 We conclude that, generally, an Arizona trial court may not require one party to pay another's attorney fees in the absence of statutory or contractual authorization to do so. Far from authorizing the shifting of attorney fees as a sanction in criminal cases, our legislature has expressly excepted criminal cases from the reach of this state's primary statute authorizing the imposition of such fees. *See* § 12-349(D).[5] And, although our state's jurisprudence has created some exceptions to the requirement that there be statutory authority for the shifting of attorney fees, no majority of any Arizona court has ever identified this as an appropriate sanction for an attorney's conduct in a criminal case. Lastly, we reject the suggestion that a trial court possesses inherent authority to shift attorney fees in a criminal case when our state's common law offers no precedent for such action and when doing so

---

[5]As noted earlier, Kaufmann contends a court's shifting of attorney fees to a criminal defendant would have a "chilling effect" on defense counsel, implicating a defendant's constitutional right to effective representation. Because we find the respondent judge abused his discretion in imposing fees for other reasons, we do not address that contention. At a minimum, however, the legislature's decision to except criminal cases from the reach of § 12-349 suggests it considered civil and criminal cases to be analytically distinct when providing our courts with remedies for abusive litigation tactics.

defies the implicit intent of pertinent legislation on the same subject. *See* § 12-349(D). We therefore conclude the respondent judge's shifting of the state's attorney fees to Kaufmann as a sanction was an abuse of discretion.[6]

**Conclusion**

¶17        For the foregoing reasons, we accept jurisdiction of the special action and grant relief, vacating the respondent judge's order requiring Kaufmann to pay the state's attorney fees.

_____
PETER J. ECKERSTROM, Presiding Judge

CONCURRING:


_____
J. WILLIAM BRAMMER, JR., Judge


_____
GARYE L. VÁSQUEZ, Judge

---

[6]As our analysis makes clear, we write only on the question of whether the trial court had inherent authority to shift attorney fees as a sanction for bad faith litigation conduct. We do not address what other sanctions might, or might not, be available to a trial court in a criminal case when facing such conduct.